No. 01-008

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 236

STATE OF MONTANA,

Plaintiff and Respondent,

v.

MICHAEL NELSON,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Nels Swandal, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Lucas J. Foust, Foust Law Office, Bozeman, Montana

For Respondent:

Hon. Mike McGrath, Attorney General; Mark W. Mattioli,

Assistant Attorney General, Helena, Montana

Marty Lambert, Gallatin County Attorney; Todd Whipple, Deputy County Attorney, Bozeman, Montana

Submitted on Briefs: August 16, 2001
Decided: November 30, 2001

Filed:

_____

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 On September 28, 2000, a jury found Michael Nelson guilty of Driving or Being in Actual Physical Custody of a Motor Vehicle while under the influence of alcohol. Nelson appeals.

¶2 The following issue is dispositive:

¶3 Whether the District Court erred by failing to instruct the jury as to the defense of necessity?

## BACKGROUND

¶4 Early in the morning of March 7, 2000, Michael Nelson was drinking at the Beaumont Club in Belgrade, Montana. The bartender, Mayrien French, testified that she served Nelson approximately four shots in about an hour and a half. Nelson's own testimony indicated that he had three or four drinks and may have been drunk. He stated that, "I was very tired and I had been drinking . . . I suppose the alcohol had some effect and being tired had some effect so I don't know which was more."

¶5 Shortly before closing time, around 1:45 a.m., French asked Nelson to leave the bar. A little while later, another bartender suggested to French that "if I were you, I'd call the cops. Somebody's sitting out in the parking lot." French called the police and asked them to drive by the Beaumont Club.

¶6 Belgrade Police Officers Chuck Sprague and Mark Stoico responded to French's call. When they arrived at the Beaumont Club, the officers found Nelson in the parking lot, slumped behind the wheel of his pickup truck. The vehicle's door was slightly ajar, its engine was running and music was blaring from its stereo. There was no evidence that Nelson had driven the truck before Officers Sprague and Stoico's arrival. The officers

rapped on the door of his vehicle, but were unable to stir Nelson. Officer Sprague then opened the vehicle's door and aimed the beam of his flashlight in Nelson's face but was still unable to wake him. Officer Sprague testified that, as he opened the door, the strong odor of alcoholic beverages struck him. Only after turning down the music and repeatedly tapping Nelson on the arm was Officer Sprague able to rouse Nelson.

¶7 Upon waking, Nelson's eyes were bloodshot and glassy, his speech was slurred, and he was confused and difficult to understand. When the officers explained to him that the bartender was afraid to leave the bar while he was in the parking lot, Nelson responded, "What bartender?" He told the officers that he had not had anything to drink.

¶8 The officers asked Nelson to exit the vehicle so that they could perform a field sobriety test. Nelson got out of the truck but refused to undergo the test. He also declined to give blood or breath samples. The officers then arrested Nelson for driving under the influence of alcohol in violation of § 61-8-401, MCA.

¶9 On June 20, 2000, the Honorable Thomas Olson presided over Nelson's initial trial. Judge Olson instructed the jury that "actual physical control . . . does not include the use of a vehicle solely for a place of shelter or habitation." The jury in that trial was unable to reach a verdict. The matter was then retried before the Honorable Nels Swandal on September 28, 2000. Judge Swandal refused to include an instruction similar to Judge Olson's, "especially under the facts here." This time, the jury found Nelson guilty of Driving or Being in Actual Physical Control of a Motor Vehicle While Under the Influence of Alcohol. Nelson appeals.

## STANDARD OF REVIEW

¶10 We review a district court's jury instructions in a criminal case to see whether the instructions, as a whole, fully and fairly instructed the jury on the law applicable to the case and whether the court abused its discretion. *State v. Baker*, 2000 MT 307, ¶ 26, 302 Mont. 408, ¶ 26, 15 P.3d 379, ¶ 26. A district court has broad discretion when it instructs the jury. *State v. Johnson*, 1998 MT 289, ¶ 28, 291 Mont. 501, ¶ 28, 969 P.2d 925, ¶ 28.

## DISCUSSION

¶11 Whether the District Court erred by failing to instruct the jury as to the defense of necessity?

¶12 Nelson argues that he was merely waiting for his brother and wife to pick him up at the bar, and that the cold night required him to do so in his vehicle. Therefore, he asserts that the District Court erred in not instructing the jury as to the defense of necessity. In support of his claim, Nelson relies on four non-Montana jurisdictions that have recognized affirmative defenses to allegations of driving while under the influence of alcohol.

¶13 Although Nelson urges this court to adopt the defense of necessity, this court has repeatedly stated that the statutory defense of compulsion merges with the common law defenses of necessity, justification, compulsion, duress and "choice of two evils." *See State v. Cox* (1994), 266 Mont. 110, 117, 879 P.2d 662, 666; *but see State v. Ottwell* (1989), 240 Mont. 376, 381, 784 P.2d 402, 405 (holding that a necessity-of-escape defense and compulsion statute are not mutually exclusive but are complementary). The defense of compulsion applies when a defendant "reasonably believes that death or serious bodily harm will be inflicted upon him if he does not perform such conduct." Section 45-2-212, MCA. Neither party asserts that the defense of compulsion is applicable to this case.

¶14 Instead, Nelson directs this Court to four non-Montana cases that recognize the defense of necessity, or similar defenses, and asks this Court to follow them. The cases are *State v. Olson* (Or. Ct. App. 1986), 719 P.2d 55, *State v. Knowles* (Me. 1985), 495 A.2d 335, *State v. Fee* (N.H. 1985), 489 A.2d 606 and *State v. Shotton* (Vt. 1983), 458 A.2d 1105. Three of these cases, however, involve codified affirmative defenses. *See Olson*, 719 P.2d at 56-57 (applying the statutory defense of choice of evils); *Knowles*, 495 A.2d at 337 (applying the statutory defense of competing harms); *Fee*, 489 A.2d at 607 (applying the statutory defense of necessity). Because Montana has no comparable statute, we find these cases unpersuasive.

¶15 Only *Shotton* deals with the common law defense of necessity. According to *Shotton*,

> The elements of the necessity defense are: (1) there must be a situation of emergency arising without fault on the part of the actor concerned; (2) this emergency must be so imminent and compelling as to raise a reasonable expectation of harm, either directly to the actor or upon those he was protecting; (3) this emergency must present no reasonable opportunity to avoid the injury without doing the criminal act; and (4) the injury impending from the emergency must be of sufficient seriousness to outmeasure the criminal wrong. *Shotton,* 458 A.2d at 1106.

¶16 While *Shotton* involved driving under the influence of alcohol, the circumstances

were much different from the ones before us. In *Shotton,* a state trooper noticed the defendant driving irregularly on a public highway. *Id.* at 1105. After following her for a couple of miles, he pulled her over and asked her to exit the vehicle. *Id.* at 1105-06. He then took her to the police station, where she told him and another officer that her husband had assaulted her and pushed her down a flight of stairs. *Id.* at 1106. She also told them that the reason she had been driving was to get to the hospital. *Id.* The officers then took her to the emergency room, where they discovered that she had multiple rib fractures and would require a five-day hospital stay. *Id.* She later testified at trial that her husband was the only other person home that night and that he had been drinking heavily. *Id.* She did not have a working telephone in her house and, although the neighbors' homes were close by, she was unwilling to risk finding them empty. *Id.* The court held that this evidence raised legitimate factual issues relating to the defense of necessity. *See Id.* at 1107. The court therefore reversed and remanded to the trial judge with directions to instruct the jury on the issue of necessity. *Id.*

¶17 Nelson urges us to follow the holding in *Shotton*. He argues that the weather required that he wait in his truck for his brother and wife to pick him up. At trial, Nelson presented evidence that the low temperature that night was 31 degrees and the wind was blowing.

¶18 Judge Swandal determined, however, that there were "certainly other options available to the defendant in this matter." We agree. There was a nearby hotel in which Nelson could have sought shelter while waiting for his brother and wife. While Nelson asserted that a bad knee prevented him from walking to this establishment, the State presented evidence to show that Nelson was able to work on his house all day before going to the bar. Nelson also had a blanket in his pickup that he could have used to keep warm, instead of turning on his car.

¶19 The case before us simply does not present a medical emergency similar to the one in *Shotton* nor does it present a situation where the defendant was blameless in creating the emergency. Nelson was not physically injured. He drove to the bar by himself, on a cold night, without a jacket, clad only in a sleeveless T-shirt. This was a self-created predicament that had multiple solutions. While the comfort of Nelson's own truck undoubtably presented a welcome refuge, we see no reason it requires us to adopt the defense of necessity.

¶20 Therefore, we conclude that the District Court did not abuse its discretion by refusing to give the jury an instruction on the defense of necessity.

¶21 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ PATRICIA COTTER

/S/ JIM RICE