FILED

09/20/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0499

DA 15-0499

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 238

DAVID W. FOLSOM and ALANA L. FOLSOM,

        Plaintiffs, Appellants, and Cross-Appellees,

  v.

CITY OF LIVINGSTON, a political subdivision of the
State of Montana,

        Defendant, Appellee, and Cross-Appellant,

EAGLE'S REST, LLC, a Montana limited liability company,
JOHN DOES 1-X,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Sixth Judicial District,
                     In and For the County of Park, Cause No. DV 13-25
                     Honorable Brenda Gilbert, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

      Terry F. Schaplow, Terry F. Schaplow, P.C.; Bozeman, Montana

      For Appellees:

      Michael J. Lilly, Berg, Lilly & Tollefsen, P.C.; Bozeman, Montana
      (for City of Livingston)

      Susan B. Swimley, Attorney and Counselor at Law; Bozeman, Montana
      (for Eagle's Rest LLC)

      Alison P. Garab, Lund Law PLLC; Bozeman, Montana
      (for Eagle's Rest LLC)

Submitted on Briefs:  July 20, 2016

Decided:  September 20, 2016

Filed:

_____
                          Clerk

2

Justice Jim Rice delivered the Opinion of the Court.

¶1 Following a jury trial, Plaintiffs/Appellants David W. and Alana L. Folsom (Folsoms) appeal from the orders of the Sixth Judicial District Court, Park County, granting motions in limine by Defendant/Appellee Eagle's Rest, LLC (Eagle's Rest). The Folsoms also challenge the jury instructions. On cross appeal, Defendant City of Livingston (Livingston) challenges the District Court's awards for damages and attorney fees to the Folsoms. We affirm in part, reverse in part, and remand for further proceedings.

*1. Did the District Court err by excluding expert testimony of a professional appraiser?*

*2. Did the District Court err in granting the motion in limine that prevented David Folsom from testifying as an expert at trial?*

*3. Did the District Court properly instruct the jury regarding unjust enrichment?*

*4. Did the District Court err by awarding negligence damages to the Folsoms in view of their election of breach of contract damages?*

*5. Did the District Court err in awarding attorney fees to the Folsoms?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2 In 1990, Recreational Leasing Inc., the Folsoms' predecessor in interest, constructed sewer and water lines and a sewer lift station outside of the City of Livingston, and transferred these utilities to Livingston pursuant to a Reimbursement Agreement (Agreement). The Agreement provided that Livingston would collect proportional reimbursement fees (referred to herein as "payback fees") when new

development connected to the water and sewer lines, and pay these fees to Recreational Leasing, Inc. The Folsoms succeeded to this contractual interest.

¶3 Eagle's Rest acquired property near Livingston in 2006 and began constructing Eagle's Landing Condominiums. It constructed Buildings A and B, which were condominiums, and Building K, which was a clubhouse. These units were connected to the sewer and water lines covered by the Agreement. Livingston initially calculated a payback fee for the hookups, but the fee was not paid by Eagle's Rest or collected by Livingston, and the Folsoms were not paid as provided in the Agreement.

¶4 In 2012, the Folsoms made an initial inquiry about the payback fees for the Eagle's Landing Condominiums hookups and then filed this lawsuit. Based upon the amount of the payback fees due under the Agreement, Livingston made an offer of judgment to the Folsoms "in the amount of $25,693.70, together with costs and reasonable attorney's fees to be determined by the Court." The Folsoms rejected the offer, and the case proceeded against both Livingston and Eagle's Rest, with the Folsoms claiming breach of contract, negligence, unjust enrichment, and *quantum meruit*. The District Court issued a Scheduling Order setting an expert disclosure deadline of July 11, 2014, and setting a deadline of October 31, 2014, for all "pretrial motions, including motions in limine and motions for summary judgment."

¶5 Meanwhile, Livingston sought and received payment of $25,693.70 in fees from Eagle's Rest on May 22, 2014. Livingston then delivered a check for that amount to the Folsoms. The Folsoms returned the check uncashed on July 9, 2014.

¶6 Counsel for the Folsoms sent a draft of their pretrial order submissions to the counsel for the Defendants in February 2015, listing professional appraiser William Bridwell as an expert witness regarding the value of the Eagle's Landing Condominiums, and Bridwell's written appraisal as an exhibit. Eagle's Rest filed a motion to exclude Bridwell's expert testimony and his appraisal on March 2, 2015, well after the motions deadline in the scheduling order, arguing that Bridwell had not been disclosed as an expert witness and permitting him to testify would be prejudicial. After hearing arguments at the pretrial conference, the District Court issued an order excluding Bridwell and his appraisal.

¶7 The next day, the Folsoms filed a notice stating they would instead rely on David Folsom's testimony regarding the value of the Eagle property. Eagle's Rest filed a second motion, this one to likewise exclude David Folsom's testimony as undisclosed expert testimony, which was also granted by the District Court.

¶8 These motions were disposed of on the eve of trial, which was conducted from March 23 to 27, 2015. The jury was instructed by the court as follows:

> The Court has decided some issues as a matter of law in this case. Specifically, the Court has ruled that the City of Livingston breached the parties' Reimbursement Agreement by failing to pay Plaintiffs the sum of $25,436.40 for Buildings A and B in Eagle's Rest at the time they were connected to the water and sewer lines on October 4, 2006.
>
> The Court has further decided that the City of Livingston cured this breach of contract in June of 2014, when it tendered the sum of $25,693.70 to the Plaintiffs. The City will be obligated, by the Court's Order, to pay this sum to the Plaintiffs.

Because the payback fee issue regarding Buildings A and B was decided as a matter of law, the special verdict form asked the jury to consider the issue of a payback fee only for the clubhouse. The form asked: "Did the City of Livingston breach the Agreement with Recreational Leasing, Inc., by failing to calculate and collect a payback fee for the Eagle's Landing clubhouse?" In answering, the jury selected "no." In answer to questions about the Folsoms' negligence claim, the jury first found that Livingston was 60% negligent, while the Folsoms were 40% negligent. In answer to the question, "What amount of money will reasonably compensate Plaintiffs for the injuries caused by negligence?", the jury answered: "$17,742 which is 60% of $25,000 error plus $2[,]742 travel compensation." Additionally, the jury specifically found that no implied contract existed between the Folsoms and Eagle's Rest, that Eagle's Rest did not retain a benefit conferred by the Folsoms by connecting to Livingston's water and sewer lines, and that the Folsoms' expectation to receive compensation from Eagle's Rest in the matter was unreasonable.

¶9     After trial, and upon a motion from Livingston, the District Court ordered the Folsoms to make an election of remedies—either for breach of contract or for negligence. The Folsoms elected to recover under breach of contract. The District Court then entered judgment, specifying that the Folsoms recovered nothing from Eagle's Rest, but awarding as to Livingston $25,460.40 in contract damages for Buildings A and B, $2,742 for the Folsoms' travel expenses, and $2,571 "in damages relative to payback fees for the clubhouse, which sum is reasonably construed as damages for negligence and is not a

form of double damages as the clubhouse payback fee was left to the jury's determination." The District Court also awarded $140,980 in attorney fees to the Folsoms as the prevailing party, pursuant to the fee provision in the Agreement. The District Court awarded almost all of the attorney fees claimed by counsel for the Folsoms, minus only the billable time spent in pursuing an injunction against the Defendants.

¶10 The Folsoms appeal the District Court's decisions in granting the motions in limine and in instructing the jury. Livingston cross-appeals the award of negligence damages to the Folsoms, and the award of attorney fees.

## STANDARD OF REVIEW

¶11 "A motion in limine can seek to prevent or limit the introduction of evidence at trial, and the authority to grant or deny the motion rests in the inherent power of the district court to admit or exclude evidence so as to ensure a fair trial. Where a decision on a motion in limine involves the exercise of discretion, this Court will not overturn the district court absent an abuse of discretion." *Meek v. Mont. Eighth Judicial Dist. Court*, 2015 MT 130, ¶ 9, 379 Mont. 150, 349 P.3d 493 (internal citations omitted) (citing *Hulse v. Dep't of Justice*, 1998 MT 108, ¶ 15, 289 Mont. 1, 961 P.2d 75; and *State v. Weldele*, 2003 MT 117, ¶ 41, 315 Mont. 452, 69 P.3d 1162). "We review for an abuse of discretion a district court's rulings on the admissibility of expert testimony." *Norris v. Fritz*, 2012 MT 27, ¶ 17, 364 Mont. 63, 270 P.3d 79 (citing *Weber v. BNSF Ry. Co.*, 2011 MT 223, 362 Mont. 53, 261 P.3d 984).

7

¶12 "We review jury instructions for an abuse of discretion to determine whether, as a whole, they fully and fairly instruct a jury on the law applicable to the case." *Ammondson v. Northwestern Corp.*, 2009 MT 331, ¶ 30, 353 Mont. 28, 220 P.3d 1 (citing *State v. English*, 2006 MT 177, 333 Mont. 23, 140 P.3d 454). "The district court maintains broad discretion when instructing the jury. The instructions must prejudicially affect the defendant's substantial rights to constitute error." *State v. Hudson*, 2005 MT 142, ¶ 10, 327 Mont. 286, 114 P.3d 210 (internal citations omitted) (citing *State v. Nelson*, 2001 MT 236, 307 Mont. 34, 36 P.3d 405; and *State v. Goulet*, 283 Mont. 38, 938 P.2d 1330 (1997)).

¶13 Livingston challenges the District Court's award of negligence damages to the Folsoms. We review a district court's conclusion of law for correctness. *See Slater v. Cent. Plumbing & Heating Co.*, 1999 MT 257, ¶ 13, 297 Mont. 7, 993 P.2d 654. "This court reviews for correctness a district court's conclusion regarding the existence of legal authority to award attorney fees. If legal authority exists, we review for an abuse of discretion a district court's order granting or denying attorney fees." *City of Helena v. Svee*, 2014 MT 311, ¶ 7, 377 Mont. 158, 339 P.3d 32 (internal citation omitted) (citing *Hughes v. Ahlgren*, 2011 MT 189, 361 Mont. 319, 258 P.3d 439).

## DISCUSSION

¶14 *1. Did the District Court err by excluding expert testimony of a professional appraiser?*

¶15 The Folsoms argue the District Court abused its discretion by excluding the testimony and report of appraiser Bridwell concerning the value of the Eagle's Rest

property. Eagle's Rest moved to exclude this testimony because the Folsoms had not disclosed Bridwell as an expert witness. The Folsoms argue the motions deadline had long passed and the District Court "should have denied [Eagle Rest's] motion immediately for this reason alone." They also argue that the District Court failed to take into account that Eagle's Rest had ample notice of their reliance on Bridwell's testimony and report, noting that they had listed Bridwell as a fact witness and had referenced his report in their pleadings and discovery responses. Eagle Rest responds that it became aware of the Folsoms' intention to rely on Bridwell as an expert only when the Folsoms' pretrial order submissions were received, and promptly sought to exclude this testimony.

¶16 A district court has "broad discretion over the admissibility of evidence and control of pretrial and trial proceedings." *Stevenson v. Felco Indus.*, 2009 MT 299, ¶ 32, 352 Mont. 303, 216 P.3d 763. Given the last minute identification of Bridwell as an expert, we do not fault either the timing of Eagle Rest's motion or the District Court's discretionary determination to take up the issue instead of dismissing it as untimely. *See State v. Wedele*, 2003 MT 117, ¶ 66, 315 Mont. 452, 69 P.3d 1162 (it was a matter of the District Court's discretion to either "modify the scheduling order and accept the motions" or to "deny such motions as untimely based upon [a party's] failure to comply with the scheduling order.").

¶17 Further, the District Court correctly cited *Superior Enters. LLC v. Mont. Power Co.*, 2002 MT 139, 310 Mont. 198, 49 P.3d 565, where, as here, a witness had been disclosed as a lay witness, but ended up providing expert testimony. *Superior Enters.*,

9

¶ 14. We reversed, concluding that because the defendant did not identify the witness as an expert in discovery disclosures, it was an abuse of discretion for the District Court to allow the expert testimony. *Superior Enters.*, ¶ 20. We conclude the District Court did not abuse its discretion in excluding Bridwell's expert testimony.

¶18 *2. Did the District Court err in granting the motion in limine that prevented David Folsom from testifying as an expert at trial?*

¶19 The District Court also granted Eagle's Rest's motion to exclude David Folsom's testimony about the value of the Eagle's Rest property because he had not previously been disclosed as an expert witness. The Folsoms argue that the District Court erroneously classified David Folsom's testimony as expert in nature and that this Court has held that a lay person may testify as to the value of real property if she or he is familiar with the property in question, citing *State v. Peterson*, 134 Mont. 52, 328 P.2d 617 (1958).

¶20 Folsom's proposed testimony about the subject property's value included average sale prices of Eagle's Rest condominiums and Eagle's Rest's net land development profit, "based on public information and the land development experience of David Folsom." The District Court reasoned that the proposed testimony was "beyond what is presumed to be possessed by men generally[,]" and did not abuse its discretion by ruling that Folsom's testimony was expert in nature. *See Superior Enters.*, ¶ 14 ("[The witness'] testimony relates information which is not within common knowledge or experience of lay people and is, therefore, in the nature of expert testimony."). Despite the fact that Folsom was essentially attempting to provide the same testimony that

Bridwell would have offered, he had likewise not been disclosed as an expert witness. The Folsoms argue that David Folsom's land development experience was revealed in discovery, early in the litigation, but at that point in time, David Folsom was simply a plaintiff and a potential lay witness. As we said in *Superior Enters.*, ¶ 19, "[f]or purposes of trial preparation, there is a big difference between knowing about a factual witness and understanding that he will be called as an expert witness by your opponent."

¶21 As with Bridwell, the District Court did not abuse its discretion in excluding David Folsom's expert testimony at trial.

¶22 *3. Did the District Court properly instruct the jury regarding unjust enrichment?*

¶23 The Folsoms argue that the unjust enrichment instruction erroneously excluded the requirement of necessary restitution in the event the jury found that Eagle's Rest had been unjustly enriched, and erroneously stated that the plaintiff must show misconduct on the part of the defendant in order to recover for unjust enrichment. However, the jury was instructed about the basic elements of unjust enrichment ("the retention of a benefit conferred . . . in circumstances where compensation is reasonably expected"), and specifically found these basic elements had not occurred. Therefore, the jury never reached further issues involved in a claim of unjust enrichment. Reviewed as a whole, we find no reversible error in these instructions.

¶24 The Folsoms argue the instructions regarding implied contracts incorrectly included superfluous instructions regarding express contracts. The District Court instructed the jury that an agreement can be reached between two parties by their conduct

11

if it appears that the parties mutually intended to agree. However, the jury specifically found that no implied contract existed between the Folsoms and Eagle's Rest, and therefore, any additional instructions regarding the elements of express contracts would have been unnecessary. Reviewed as a whole, we find no reversible error.

¶25    The Folsoms argue that the District Court erroneously instructed the jury that if the plaintiffs did not prove unjust enrichment, then the jury must dismiss the claim for *quantum meruit* damages. The Folsoms argue that they "may prove unjust enrichment in the form of ELC's increased property value, even if they don't prove *quantum meruit*." We have previously held that *quantum meruit* is the measure of equitable damages in an unjust enrichment action. *See Storms v. Bergsieker*, 254 Mont. 130, 133, 835 P.2d 738, 740-41 (1992). The jury was instructed that "[i]f you determine that Eagle's Rest, LLC has been unjustly enriched, you must calculate the damages based upon the evidence provided by the plaintiffs. The measure of damages for a claim of unjust enrichment is . . . *quantum meruit*. . . ." However, the jury found that no unjust enrichment had occurred to entitle the Folsoms to any equitable damages. It was not error for the District Court to instruct the jury not to consider the damages that would follow unjust enrichment if that claim had been not proven. We affirm the instructions given to the jury.

¶26    *4. Did the District Court err by awarding negligence damages to the Folsoms in view of their election of breach of contract damages?*

¶27    The question of Livingston's failure to collect payback fees for the clubhouse as a breach of contract claim, and damages to compensate the Folsoms for Livingston's

12

negligence, were separate questions of fact asked of the jury on the verdict form. The issue of breach of contract damages for the payback fees for Buildings A and B was never put to the jury. Instead, the District Court instructed the jury that this issue had already been decided as a matter of law. Accordingly, the verdict form asked the jury to find whether Livingston breached the Agreement by failing to collect a payback fee for the clubhouse. The jury stated "No." However, the jury nonetheless found that Livingston was 60% negligent and that the Folsoms were entitled to 60% of the damages associated with failure to pay the payback fees for Buildings A and B ($15,000), and 60% of the claimed travel expenses ($2,742). Livingston moved the District Court to require the Folsoms to elect their remedy either under breach of contract or negligence, and the District Court did so. The Folsoms chose breach of contract. Thus, they received an award of $25,436.40 in contract damages—decided as a matter of law before trial—but also were granted $2,742 for travel expenses the jury had awarded in negligence, and $2,571 for clubhouse payback fees. On cross-appeal, Livingston argues that the District Court erred by awarding the travel expenses as negligence damages because it contradicts the District Court's own reasoning that the Folsoms must choose one remedy or the other. In addition, Livingston argues that the District Court erred in awarding the payback fee for the clubhouse, as this award of damages had no basis whatsoever in the jury's verdict.

¶28    In response to the election of remedy motion, the District Court initially observed that "the jury could not consider any damages for [Livingston's] failure to pay [the Folsoms] for the connection of [Eagle Rest's] Buildings A and B" because the jury had

13

been instructed that this breach had been cured by Livingston and that Livingston was already obligated to pay these fees. It thus concluded that a damage award for payback fees on Buildings A and B based upon breach of contract and a negligence damage award based upon the same issue would constitute a double recovery, and required the Folsoms to elect their remedy between breach of contract and negligence. It has been acknowledged that potential liability in tort may coexist with potential liability in contract, and in such a case, "an injured party has the right to elect which form of action he will pursue." *Corp. Air v. Edwards Jet Ctr. Mont. Inc.*, 2008 MT 283, ¶ 49, 345 Mont. 336, 190 P.3d 1111 (citing *Thiel v. Taurus Drilling*, 218 Mont. 201, 710 P.2d 33 (1985)). An exclusive availability of remedy is not always the case, as we have previously stated:

> A cause of action may sound in tort although it arises out of a breach of contract, if a defaulting party, by breaching the contract, also breaches a duty which he owes to the other party independently of the contract. . . . [A] tort arises out of a breach of contract if the party also breaches a duty which he owes to another independently of the contract, and which duty would exist even if no contract existed.

*Boise Cascade Corp. v. First Sec. Bank*, 183 Mont. 378, 392, 600 P.2d 173, 181 (1979) (internal quotation marks and citation omitted). Here, there were not independent duties, and the District Court was well within its power to direct the Folsoms to elect one form of remedy over another for the fees on Buildings A and B, citing for additional support § 27-1-303, MCA ("A person may not recover a greater amount in damages for the breach of an obligation than the person could have gained by the full performance of the obligation on both sides unless a greater recovery is specified by statute.").

14

¶29 It is clear that the District Court understood the election of remedies requirement to apply only to the damages associated with the payback fees for Buildings A and B. The jury specifically awarded damages of $2,742 for "travel compensation" under negligence, which the District Court determined did not duplicate any damages Fossums had obtained by their breach of contract claim. *See Renville v. Taylor*, 2000 MT 217, ¶ 14, 301 Mont. 99, 7 P.3d 400 ("The function of this Court is not to agree or disagree with a jury's verdict."); *Sandman v. Farmers Ins. Exchan.*, 1998 MT 286, ¶ 41, 291 Mont. 456, 969 P.2d 277 ("Moreover, in our review of jury verdicts in civil cases, we have stated . . . that we do not decide whether the verdict was correct or whether the jury made the right decision; that we will not lightly overturn the verdict of a finder of fact, especially a jury . . . .") (citation omitted). We therefore affirm the District Court's judgment of $2,742 in travel expenses.

¶30 However, the District Court's decision to award the $2,571 for payback fees for the clubhouse is without basis in the jury's verdict. In awarding this amount, the District Court stated, "[the Folsoms] are further entitled to the $2[,]571 in damages relative to payback fees for the clubhouse, which sum is reasonably construed as damages for negligence and is not a form of double damages as the clubhouse payback fee was left for the jury's determination." The jury did make a determination on this issue, specifically finding that Livingston had not breached the contract in regard to the clubhouse fees. Neither did the jury award these damages under negligence. There being no award of this

amount by the jury, the District Court contradicted the verdict and erred by granting this amount, and we reverse this award of damages.

¶31   *5. Did the District Court err in awarding attorney fees to the Folsoms?*

¶32   Livingston argues "the District Court abused its discretion by awarding Folsoms attorney fees incurred in prosecuting all of their tort claims." Notably, Livingston does not dispute the District Court's conclusion that the Folsoms were the prevailing party and were entitled to an award of reasonable attorney fees, but, rather, argues that the amount of the award—$140,980—was not reasonable. We affirm an award of attorney fees to the Folsoms, but reverse the amount of the award as unreasonable, and remand to the District Court for reconsideration.

¶33   In general, attorney fees are available only when provided for by statute or by contract. *See Blue Ridge Homes, Inc. v. Thein*, 2008 MT 264, ¶ 78, 345 Mont. 125, 191 P.3d 374 ("A court may award attorney fees only where a statute or contract provides for their recovery.") (citation omitted). Fees are not generally available for tort claims. The Agreement provided for attorney fees to the prevailing party for claims arising thereunder. Further, "[alt]hough reviewed for abuse of discretion, an award of attorneys' fees must be reasonable." *Houden v. Todd*, 2014 MT 113, ¶ 37, 375 Mont. 1, 324 P.3d 1157 (citation omitted). In determining whether an award is reasonable, we have previously articulated non-exclusive guidelines for the district courts to consider. These guidelines include: "(1) the amount and character of the services rendered; (2) the labor, time and trouble involved; (3) the character and importance of the litigation in which the

16

services were rendered; (4) the amount of money or the value of the property to be affected; (5) the professional skill and experience called for; (6) the attorneys' character and standing in their profession; and (7) the results secured by the services of the attorneys." *Plath v. Shonrock*, 2003 MT 21, ¶ 36, 314 Mont. 101, 64 P.3d 984 (citation omitted).

¶34 Livingston argues that the "results secured" in this case highlight that the award of almost all of the Folsoms claimed attorney fees was unreasonable. Early in the case, Livingston made a formal offer of judgment for the breach of contract damages, in the amount of $25,693.70, "together with costs and reasonable attorney's fees to be determined by the Court." This offer was rejected, and the case was litigated through trial. In 2014, once Eagle's Rest had been named a defendant in the Second Amended Complaint, Livingston delivered a check to Alana Folsom in the amount of $25,693.70. The check was returned to the city, uncashed. The Folsoms ultimately claimed over $1,000,000 in damages stemming from the breach of the Agreement, but, after trial, received a small damage award in the range of the pretrial offers.

¶35 As the District Court noted, the Folsoms' actual recovery was "minimal in light of their demand." After several years of litigation, the Folsoms essentially received what Livingston had offered them all along, making the "results secured" factor a significant one in the determination of reasonable attorney fees here. We conclude it was an abuse of discretion for the District Court to award essentially all of the attorney fees incurred by the Folsoms, including those associated with their tort claims, and we, therefore, reverse

17

the award. We remand for consideration of an award that would more appropriately reflect what the litigation accomplished.

¶36 Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.


/S/ JIM RICE


We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA


Justice James Jeremiah Shea, concurring.

¶37 I concur fully with the Court's opinion. I write separately to address the Folsoms' counsel's baseless, and completely inappropriate, ad hominem attack on the District Court Judge who presided over this case.

¶38 The Folsoms' counsel devotes an entire section of his opening brief before this Court to allegations that the District Court Judge essentially engaged in public malfeasance because she "was simply not going to allow the Plaintiffs the potential of a large jury verdict, and the ensuing publicity for the Court." I will not go into the substance—or, more appropriately, lack thereof—of these allegations because, aside from the fact that the record divulges no basis for them, their lack of merit and relevancy is best illustrated by the Folsoms' counsel's own admission that "these actions of the Court

18

are not part of this appeal." This then begs the question: So why make these allegations if not to gratuitously malign a member of the judiciary?

¶39 The Folsoms' counsel's criticism of the District Court Judge is further belied by the fact that this Court has unanimously affirmed the District Court's rulings on all of the Folsoms' assignments of error. Ironically the only error we have found in this case is the District Court's award to the Folsoms of some damages to which they were not entitled, Opinion, ¶ 30, and the District Court's award of essentially all of the Folsoms' attorney fees, which we have concluded is incommensurate with what the Folsoms' counsel actually accomplished with this litigation, Opinion, ¶ 35.

¶40 Eagle's Rest points out in its brief that the Folsoms' counsel's attack on the District Court Judge appears to violate M. R. Prof. Conduct 8.2(a), which provides, in pertinent part:

> A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer . . . .

Eagle's Rest's point may be well taken. If there is a legitimate basis for the Folsoms' counsel's allegations of malfeasance towards the District Court Judge in this case, I cannot find it in the record before this Court. That being noted, due process requires that we refrain from making that judgment at this juncture. This is more appropriate for consideration by the Commission on Practice.

/S/ JAMES JEREMIAH SHEA

19