Justice Jim Rice delivered the Opinion of the Court.
***228 ¶1 George Hudon (Hudon) appeals his conviction of driving under the influence of alcohol or drugs, in violation of § 61-8-401, MCA (DUI), after jury trial in the Twenty First Judicial District Court, Ravalli County. We affirm, and restate the issues as follows:
1. Did the District Court err by denying Hudon's motion to exclude evidence because of an asserted discovery violation by the State?
2. Did the District Court err by granting the State's motion in limine to prevent Hudon from arguing the State had not fulfilled its discovery obligations, and err by disallowing Hudon's discussion of the subject of the motion in limine in his closing argument?
3. Did the District Court err by allowing the State to amend the information less than five days before trial?
4. Did the District Court err by admitting a State exhibit at trial when the redacted version of the exhibit was not provided to Hudon until the morning of the first day of trial?
FACTUAL AND PROCEDURAL BACKGROUND
¶2 On July 23, 2017, at approximately 12:30 a.m., Ravalli County Sheriff's Deputies Jason Liechty (Liechty) and Robert McGarvan (McGarvan) were patrolling in the Florence area near One Horse Lane when they witnessed a vehicle swerve from its lane of travel into the oncoming lane, and back again. The deputies initiated a stop of the vehicle, whose driver was Hudon.
¶3 Upon making contact, McGarvan smelled alcohol on Hudon and ***229 noticed he had bloodshot eyes and would not make eye contact. McGarvan described Hudon as "very fidgety," and stated that he kept reaching between his legs and under his car seat. Hudon admitted he had been drinking and asked both to go home and go to jail, because "he knew he was in trouble." When Liechty asked Hudon how much he had to drink, Hudon responded, "Quite a bit."
¶4 The deputies conducted two tests to determine whether Hudon was under the influence of alcohol or drugs-the Horizontal Gaze Nystagmus (HGN) test and the walk and turn test. Hudon exhibited six out of six indicators of impairment on the HGN test. On the walk and turn test, Hudon demonstrated six out of eight indicators of impairment, including loss of balance, inability to walk heel to toe, stepping off the line, making an improper turn, and stopping in the middle of the test. Hudon refused to do the one-leg stand test. Hudon's preliminary breath test yielded a result of 0.143 BAC. Hudon refused further testing.
¶5 Liechty arrested Hudon for DUI and was granted a telephonic search warrant for Hudon's blood, which was drawn at Marcus Daly Memorial Hospital and sent to the Montana State Crime Laboratory (Crime Lab) for processing. Blood testing revealed that Hudon's blood alcohol content was 0.284 BAC. Because Hudon had three prior DUI convictions, he was charged with felony DUI, for a fourth offense.
¶6 Hudon sought various items of discovery from the prosecution, including Crime Lab records and information related to Hudon's charge in this case.[1] The prosecutor, *276 Angela Wetzsteon, forwarded Hudon's discovery requests to the Crime Lab's toxicologist who analyzed Hudon's blood. By email, toxicologist Doug Lancon informed Wetzsteon that the Crime Lab's quality control manager, Emily Wemlinger (Wemlinger), was responsible for handling discovery requests and provided her contact information. Administrator Scott Larson further advised that certain items requested by Hudon required a court order to obtain, and that at least one of Hudon's attorneys was aware of this because he had requested this information in the past ***230 and knew the process. Wetzsteon then emailed Hudon's attorneys, advising them "the information held by the [C]rime [L]ab is mutually available to the defense just as it is to the state," and that they needed to directly contact Wemlinger for the information sought. Wetzsteon provided Wemlinger's email address and copied Wemlinger on the email so that she would have notice of Hudon's pending request. Wemlinger then contacted Hudon's counsel and informed him that he should contact her directly regarding his discovery requests.
¶7 Hudon's counsel did not contact Wemlinger or otherwise request the information from the Crime Lab. Instead, Hudon's attorneys responded to the prosecutor by email, stating they would not contact the Crime Lab, the prosecution was violating Hudon's due process rights by not obtaining the information for Hudon, and that they would file a motion to exclude all the toxicology information in the case based on the prosecution's failure to provide the information. Wemlinger again contacted Hudon's counsel and advised that he should contact her regarding his discovery request, but Wemlinger received no further inquiry or response.
¶8 Hudon moved to exclude the Crime Lab records and information because the prosecution did not produce the information requested by Hudon. The prosecution responded, arguing it had fulfilled its discovery obligations by contacting the Crime Lab and instructing Hudon how to obtain the information, which was in the exclusive possession and control of the Crime Lab. The prosecution attached the relevant Crime Lab policies to its response.[2] Hudon filed a reply brief seeking sanctions under § 46-15-329, MCA, for the prosecution's alleged noncompliance.
¶9 On December 6, 2017, the District Court issued an order denying Hudon's motion to exclude the Crime Lab records and information, reasoning "Hudon's argument that the State is required under § 46-15-322, MCA, to request and obtain the information he seeks from the Crime Lab and then deliver it to him is unpersuasive and unsupported by law." The court determined the prosecution satisfied its discovery obligations under § 46-15-322, MCA, by providing Hudon with the relevant Crime Lab employee contact information.
¶10 After the District Court issued its order, the prosecution learned ***231 that Hudon intended to use certain documents from the Crime Lab-unrelated to his case or to any of the Crime Lab personnel involved in his case-at trial in an effort to show the prosecution violated its discovery obligations. The prosecution moved in limine to exclude evidence or argument to the effect the prosecution had violated discovery, arguing these would violate the court's order finding the prosecution had fulfilled its discovery obligation, were not relevant, and would unfairly prejudice the State. The District Court granted the motion, reasoning Hudon chose to "forego obtaining Crime Lab information he believes is relevant out of his continued belief that the State was required to obtain it for him." Accordingly, the court ruled Hudon was precluded from presenting evidence or *277 argument "that accuses or suggests the State failed to provide Defendant with requested discovery or violated evidentiary or procedural rules." (emphasis added).
¶11 Hudon began his closing argument by stating that the evidence introduced by the prosecution was "incomplete." The prosecutor did not object, and moments later, Hudon added:
The blood test is probably the most incomplete, inconsistent piece of evidence that you received here yesterday. You received one piece of paper. One. You heard testimony from Ms. Everett [a toxicologist from the Crime Lab].... But you didn't get to hold those reports in your hand. The [S]tate did not go through that result, the actual result in detail with Ms. Everett. Ask yourself why not. Why didn't they go through that level of detail to prove this case?
The prosecution objected, stating Hudon's argument was "the subject of a pretrial ruling," and the court sustained the objection.
¶12 On April 4, 2018, the same day the prosecution filed its motion in limine, it also moved to amend the information. The original information charged Hudon with DUI under § 61-8-401, MCA, while the amended information added the alternative charge of operation of a vehicle with an alcohol concentration of 0.08 BAC or more, a felony, under § 61-8-406, MCA (DUI per se). The District Court granted the motion the next day, and the amended information was filed later that day. On the morning of trial, Hudon moved for denial of the amendment as untimely. In response, the prosecution argued the timing of the amendment was irrelevant because it was not substantive, but only as to form, which could be done at any time before verdict. The court denied Hudon's motion to deny the amendment, reasoning the DUI per se charge was closely related to the DUI charge, the two charges were based on the same facts, and no new ***232 charge was added because it was in the alternative.
¶13 At the final pre-trial conference on the morning of the first day of trial, the parties discussed a video of the officers' DUI investigation of Hudon on the night of his arrest, which the prosecution intended to introduce. The prosecution previously provided a complete copy of the hour-long video to Hudon during discovery, but had redacted large portions after Hudon filed a motion to exclude evidence about the portable breath test, his prior DUI convictions, drugs or drug paraphernalia, and the HGN test, absent proper foundation. Hudon did not receive a copy of the redacted video until the final pretrial conference, at which point he objected to its admission because he had not received a copy in time to adequately prepare for trial and did not know what information had been redacted. In response, the prosecution offered to play the original video to the jury instead, fast-forwarding through the redacted portions and, alternatively, suggested that Hudon review the redacted version before trial began, because it was only 11 minutes long. The prosecution noted it had reminded Hudon's counsel to bring a computer to view the redacted video on the morning of trial, and, accordingly, Hudon had not been unfairly surprised.
¶14 Hudon viewed the video before trial but continued to object to its admission, arguing the prosecution had untimely presented a new exhibit that violated his due process rights. The court denied Hudon's objection and admitted the video, and it was played to the jury.
¶15 After a two-day trial, the jury convicted Hudon of DUI, and did not address the alternative charge of DUI per se. Hudon appeals.
STANDARD OF REVIEW
¶16 "A district court has broad discretion when determining the relevance and admissibility of evidence. Accordingly, we generally review evidentiary rulings for abuse of discretion. A district court abuses its discretion when it acts arbitrarily, without conscientious judgment, or exceeds the bounds of reason. To the extent the court's ruling is based on a rule of evidence, a statute, or a constitutional right, our review is de novo." State v. Given , 2015 MT 273, ¶ 23, 381 Mont. 115, 359 P.3d 90 (citations omitted). Additionally, the authority to grant or deny a motion in limine "rests in the *278 inherent power of the district court to admit or exclude evidence so as to ensure a fair trial. Where a decision on a motion in limine involves the exercise of discretion, this Court will not overturn the district court absent an abuse of discretion." Folsom v. City of Livingston , 2016 MT 238, ¶ 11, 385 Mont. 20, 381 P.3d 539 (quoting ***233 Meek v. Mont. Eighth Judicial Dist. Ct. , 2015 MT 130, ¶ 9, 379 Mont. 150, 349 P.3d 493 ). Finally, we review a district court's determination "to permit an amendment to a criminal complaint or information for an abuse of discretion." State v. Hardground , 2019 MT 14, ¶ 7, --- Mont. ----, 433 P.3d 711.
DISCUSSION
¶17 1. Did the District Court err by denying Hudon's motion to exclude evidence because of an asserted discovery violation by the State?
¶18 Hudon argues the District Court erred by denying his motion to exclude his blood test results from the Crime Lab because the prosecution willfully withheld additional Crime Lab records and information, violating its discovery duties under § 46-15-322, MCA. That provision, which governs the prosecution's discovery obligations, provides: "Upon request, the prosecutor shall make available to the defendant for examination and reproduction the following material and information within the prosecutor's possession or control...." According to the statute's plain language, the discovery obligation extends to information, identified in the statute, that is in "the prosecutor's possession or control."
¶19 Here the evidence sought was in the possession of the Crime Lab. The Crime Lab is "a laboratory of criminalistics within the" Montana Department of Justice that was established "to perform analysis of specimens submitted by all Montana state, county, or city law enforcement officers and all state agencies." Section 44-3-301(1), MCA. Consequently, the Crime Lab is under the control of a different government agency, separate from the county attorney's office, and is not located at or within a county attorney's office. The Crime Lab is not supervised by the county attorney's office, does not report to or take direction from the county attorney's office, is not funded by the county attorney's office, and is not administratively connected to any county attorney's office.[3]
¶20 Further, county attorneys must comply with the same procedures to obtain evidence from the Crime Lab that are applicable to the ***234 defense. Under the Crime Lab's policy, of which Hudon's counsel was aware, certain kinds of information sought from the Crime Lab require a court order, whether requested by the prosecution or the defendant, illustrating that "control" of such information was exercised solely by the Crime Lab, not the county attorney. Thus, for purposes of § 46-15-322(1), MCA, the evidence sought by Hudon in this case was not in the "possession or control" of the prosecution.
¶21 Moreover, any due process concerns were more than alleviated by the prosecution, followed by the Crime Lab itself, advising Hudon how to obtain the evidence he sought. Similar to our decision in State v. Sol , 282 Mont. 69, 78, 936 P.2d 307, 312 (1997), where we determined the defendant was not prejudiced when he was on notice of the existence of the evidence, knew how and from whom to obtain the evidence, and could have obtained it himself, Hudon cannot claim a due process or discovery violation here. Sol , 282 Mont. at 78, 936 P.2d at 312.
¶22 2. Did the District Court err by granting the State's motion in limine to exclude Hudon from arguing that the State had not fulfilled their discovery obligations to him, and err by disallowing Hudon's discussion of the subject of the motion in limine in his closing argument?
¶23 Hudon argues the District Court violated his due process rights by granting the *279 State's motion in limine to exclude Hudon's evidence and arguments about the subject of the motion at trial, because it illegally shifted the burden of proof to Hudon and did not allow him to rely upon the nature of the prosecution's evidence presented at trial.
¶24 Evidence that is not relevant is inadmissible. Mont. Rule Evid. 402. "Relevant evidence" is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Mont. Rule Evid. 401. Otherwise relevant evidence may also be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Mont. Rule Evid. 403. A court has the "inherent power" to grant or deny a motion in limine "to ensure a fair trial." Folsom , ¶ 11.
¶25 Hudon sought to admit, and subsequently mentioned in his closing argument, documents from the Crime Lab unrelated to his case or to any of the Crime Lab personnel involved in his case, in an effort to prove the prosecutor failed to produce evidence. This evidence did not pertain to Hudon's case and likely did not have a tendency to make the existence of any fact related to his guilt more or less probable. Mont. Rule Evid. 401. Nonetheless, even if the evidence was relevant to an attack on the prosecution's efforts, the evidence was unfairly ***235 prejudicial to the State because it was premised upon an assertion that the prosecution had violated its discovery obligations, about which the District Court had already ruled to the contrary. Further, admitting the evidence could well have confused or misled the jury regarding the issues to be determined.
¶26 Hudon argues the District Court also erred by limiting his closing argument that the prosecution's evidence was incomplete because he "was not commenting upon the court's denial of [his] motion." However, Hudon's argument fails to account for all of the circumstances. The District Court's order in limine did not merely prohibit comment on its ruling, but, rather, prohibited any defense effort to "accuse[ ] or suggest" the prosecution had failed to provide evidence in discovery. The defense pushed back on this ruling throughout the trial, leading to objections by the prosecution that were sustained. While defense counsel's argument in closing, quoted above, may have been a generally appropriate subject for argument, the context here was the District Court's ruling that the prosecution had not violated its discovery obligations, and the defense's continued efforts, despite the ruling, to establish or imply the prosecution was hiding something, when in reality the defense had failed to obtain the additional evidence it desired. In that context, we cannot conclude the District Court abused its discretion by either granting the State's motion in limine, or by prohibiting Hudon from introducing evidence or argument that the court perceived was an effort to raise an issue it had prohibited.
¶27 3. Did the District Court err by allowing the State to amend the information less than five days before trial?
¶28 Hudon argues the District Court erred by allowing the State to amend the information less than five days before trial, asserting the amendment was substantive rather than of form, and that the differences between the two charges "alter[ed] the crime charged as well as the elements, burdens of proof, nature of proof and defenses."
¶29 Amendments to an information "in matters of substance" may be allowed not less than five days before trial, providing a motion seeking leave to amend is filed in a timely manner. Section 46-11-205(1), MCA. A court may allow an amendment "as to form" at any time before the verdict is issued, providing the amendment will not prejudice the substantial rights of the defendant. Section 46-11-205(3), MCA ; Hardground , ¶ 9. Here, the motion to amend the information was filed five days before trial, and approved by the court the next day. While the amendment itself was not filed at least five days before trial, we conclude any violation of the statute was harmless because it did not prejudice Hudon. He had notice of the amendment and, ultimately, ***236 he was not convicted of the subject of the amended information-the alternative charge of DUI per se-thus *280 mooting the effect of the amendment. "A cause may not be reversed by reason of any error committed by the trial court against the convicted person unless the record shows that the error was prejudicial.... Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Section 46-20-701, MCA. We need not determine whether the amendment was one of substance or form.
¶30 4. Did the District Court err by allowing the State to present an exhibit at trial when the redacted version of that exhibit was not disclosed to Hudon until the morning of the first day of trial?
¶31 Lastly, Hudon argues his due process rights were violated when the District Court allowed the State to introduce the redacted video exhibit that had not been disclosed to Hudon in its redacted form until the morning of the first day of trial.
¶32 Montana Rule of Evidence 104(a) provides that "the admissibility of evidence shall be determined by the court." Moreover, "[a] district court has broad discretion when determining the relevance and admissibility of evidence," thus this determination is reviewed for an abuse of discretion. Given , ¶ 23.
¶33 Hudon received the proffered video in its entirety well before trial. He moved to exclude, and obtained exclusion of, significant portions of the video. The prosecutor advised Hudon that he would receive a copy of the video, with redactions he had sought, on the morning of the first day of trial, and reminded him to bring a computer to view it. The redacted video was 11 minutes in length, and this version was shown to the jury. Thus, Hudon was long aware of the evidence that would be used against him, and had the opportunity to view the redacted version before trial began. Accordingly, the District Court did not abuse its discretion by admitting the evidence and Hudon's due process rights were not violated.
¶34 Affirmed.
We concur:
JAMES JEREMIAH SHEA, J.
BETH BAKER, J.
LAURIE McKINNON, J.
INGRID GUSTAFSON, J.

Hudon requested 14 types of information regarding the blood test results. Specifically, Hudon sought: the CVs of all Crime Lab employees involved in the handling of his blood sample; a copy of the actual chromatogram of his blood testing results; toxicology worksheets; toxicology notes; the actual blood sample collection containers; the Crime Lab's most recent certification; maintenance, calibration, and certification records for equipment used in the blood analysis; refrigerator temperature logs; complete chain of custody records; batch test information; and the Crime Lab's complete case file related to his blood sample.

The relevant Crime Lab policies state: "[c]onfidential criminal justice information and supporting casework documentation contained in the case file will be provided to either the prosecution or defense upon receipt of a copy of a Court Order or Subpoena Duces Tecum which is signed or stamped by the Judge."

Our inquiry here is distinct from the speedy trial consideration of delay in the processing of evidence, which we have held is "institutional delay" attributable to the State as a whole. See State v. Velasquez , 2016 MT 216, ¶¶ 13-15, 384 Mont. 447, 377 P.3d 1235. In those cases, we "attribute the delay to the responsible party," Velasquez , ¶ 13, and the prosecution "bears a higher burden to provide justifications for the delay." Velasquez , ¶ 18. The statutory question we address here concerns the production of evidence within "the prosecutor's possession or control." Section 46-15-322, MCA (emphasis added).