DA 09-0013

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 434

JOHN TALMAGE, d/b/a MONTANA
DIAMOND AIRE, INC.,

        Plaintiff and Appellant,

   v.

CITY OF KALISPELL, KALISPELL CITY
AIRPORT ADVISORY BOARD,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV 04-286(B)
Honorable Katherine R. Curtis, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        James D. Moore, Attorney at Law, Kalispell, Montana

        For Appellees:

        Richard M. Hickel, Adjutant Kalispell City Attorney, Kalispell, Montana

        Submitted on Briefs:  September 16, 2009

               Decided:  December 22, 2009

Filed:

        _____
                       Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     John Talmage, d/b/a Montana Diamond Aire, Inc., appeals from the order of the Eleventh Judicial District Court, Flathead County, granting the City of Kalispell and the Kalispell Airport Advisory Board's (collectively, Kalispell) motion for summary judgment. The issue on appeal is whether the District Court erred in granting Kalispell's motion for summary judgment because there are material facts at issue. We reverse and remand for further proceedings consistent with this Opinion.

¶2     Talmage owns and operates an aircraft maintenance and fueling business adjacent to the Kalispell City Airport (the Airport). The deed to Talmage's property, which was purchased from the Airport by Talmage's predecessor in interest, contains a restriction that limits the property's use to airport operations.

¶3     In 1999 and 2002, engineering consultants recommended that Kalispell increase security at the Airport. In response to this recommendation, Kalispell constructed a security fence in October of 2003. This resulted in the construction of a fence between Talmage's business and the Airport runway. Kalispell installed a forty-eight foot wide gate to allow aircraft to access Talmage's business.

¶4     In May 2004, Talmage filed a complaint naming, among others, the City of Kalispell and the Kalispell City Airport Advisory Board as defendants. The complaint alleged unreasonable interference with use of an easement, private nuisance, tortious interference with business prospects, and infliction of emotional distress. Talmage also sought punitive damages.

¶5      The lawsuit languished for many months. Talmage's counsel withdrew on May 7, 2007. On May 23, Talmage filed an unopposed motion to extend the time within which to further plead so that he could secure counsel.

¶6      Kalispell filed a motion for summary judgment on May 31, 2007. In its summary judgment motion, Kalispell claimed that it was justified in fencing the Airport and that the forty-eight foot gate in the fence was wide enough to accommodate the majority of planes utilizing the Airport. According to Kalispell, the average plane utilizing the Airport had a wingspan of thirty-seven feet. In support of its argument that it had provided reasonable access to Talmage's property, Kalispell submitted the affidavit of the Airport manager stating that he had personally observed a Cessna 185 aircraft pass through the gate to Talmage's business, turn around, and exit through the gate without difficulty.

¶7      Kalispell relied on § 67-10-201(1), MCA (2003), which states that a municipality may "develop, construct, enlarge, improve, maintain, equip, operate, regulate, protect, and police airports and air navigation facilities," and argued to the District Court that it was entitled to fence the Airport, as long as Talmage had reasonable access.

¶8      Acting *pro se*, Talmage filed a brief in opposition to Kalispell's motion. Talmage argued that his property was the only business on or adjacent to the Airport that was compromised by the fence. Talmage also alleged, albeit in his brief, that the only other source for fuel at the Airport was not fenced, and it was owned by Kalispell. With respect to the width of the gate, Talmage maintained that it is not wide enough to accommodate twin-engine aircraft, which made up the bulk of his business. Talmage also averred that most of his customers who fly turbine-powered aircraft and helicopters cannot enter his business or

3

park next to his gas pumps, and some aircraft could not access his facility without the use of a tug pull. Talmage also documented several instances where airplanes had collided with the fence.

¶9     Talmage also filed an affidavit in response to the motion for summary judgment in which he alleged that Kalispell had taken a number of steps to drive him out of business. Talmage claimed that Kalispell had fenced off his business from the Airport because the previous owner had not paid his Airport-user fees. Talmage also maintained that Kalispell had approved a fencing plan in September 2003 that would not have restricted access to his business, but on October 20, 2003, told him that he had only until October 27 to fence his property himself.

¶10     Talmage also claimed that in December 2004, Kalispell sent his predecessor a number of emails asking whether the predecessor was still the owner of the property and stating that Kalispell was "very interested in the property and would like to possibly buy it." Lastly, Talmage alleged that Kalispell had removed the taxiway that guided pilots to his business and in its place painted markings on the pavement indicating the former taxiway was a vehicle access road. Talmage attached documentation to his affidavit to support these allegations.

¶11     The District Court concluded that all of Talmage's claims hinged on whether the access between his business and the Airport was unreasonably obstructed by the forty-eight foot gate. The District Court noted that while Kalispell had provided evidence that the gate is sufficiently wide for aircraft access, Talmage had presented no evidence to the contrary, and therefore summary judgment was appropriate. In addition, the District Court concluded

4

that Talmage had not supported his claim of emotional distress and that Kalispell was immune from exemplary and punitive damages. Accordingly, the District Court granted summary judgment in favor of Kalispell on all counts.

¶12   Our standard of review in appeals from summary judgment rulings is de novo. *Town & Country Foods, Inc. v. City of Bozeman*, 2009 MT 72, ¶ 12, 349 Mont. 453, 203 P.3d 1283. We review a district court's grant of summary judgment to determine whether it was correctly decided pursuant to M. R. Civ. P. 56, which provides that summary judgment is appropriate only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Erler v. Creative Finance & Investments, L.L.C.*, 2009 MT 36, ¶ 16, 349 Mont. 207, 203 P.3d 744. All reasonable inferences that may be drawn from the evidence must be drawn in favor of the party opposing summary judgment. *Hopkins v. Superior Metal Workings Systems, L.L.C.*, 2009 MT 48, ¶ 5, 349 Mont. 292, 203 P.3d 803.

¶13   On appeal, Talmage argues that he has raised a number of material facts that remain at issue and that summary judgment is therefore precluded by M. R. Civ. P. 56(c).

¶14   The parties do not dispute that Kalispell has the authority to fence the Airport. However, upon review of the record, we conclude that a genuine issue of material fact exists regarding whether the fence and gate provided by Kalispell tortiously restricts or interferes with Talmage's business. While perhaps not artfully pled, especially while he was acting *pro se*, the record contains sufficient evidence to raise a fact issue as to whether the gate installed was of sufficient width to allow reasonable access to Talmage's business, and whether Kalispell, in constructing the fence and gate, acted to tortiously interfere with

5

Talmage's business, unreasonably interfere with Talmage's alleged implied easement, and intentionally inflict severe emotional distress.

¶15    In his affidavit in opposition to the motion for summary judgment, Talmage also set forth facts concerning Kalispell's actions in regard to the taxiway leading into his business. Because these facts are to be taken as true for purposes of the motion for summary judgment, a genuine issue of material fact is raised concerning whether, by altering this taxiway, Kalispell intentionally sought to harm Talmage's business, interfere with his alleged implied easement, and cause him severe emotional distress.

¶16    Talmage abandons his claims for private nuisance and punitive damages on appeal. The judgment of the District Court is reversed and this matter is remanded for trial on Talmage's claims based on unreasonable interference with the use of an easement, tortious interference with business relations, and intentional infliction of severe emotional distress.

/S/ JOHN WARNER

We Concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ BRIAN MORRIS
/S/ PATRICIA O. COTTER