
DA 10-0440

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 138

DICK ANDERSON CONSTRUCTION,
INC., a Montana corporation,

      Plaintiff and Appellant,

    v.

MONROE PROPERTY COMPANY, LLC,
a Delaware limited liability company,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV 01-710
Honorable Katherine M. Irigoin, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    John H. Guin; Law Office of John H. Guin, PLLC, Spokane, Washington

    For Appellee:

    Jeffrey T. Dickson; Christian, Samson & James, PLLC, Missoula, Montana

    Scott M. Stearns, Randy J. Cox, Thomas J. Leonard; Boone Karlberg, P.C. Missoula, Montana

Submitted on Briefs:  April 6, 2011

Decided:  June 14, 2011

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Dick Anderson Construction (DAC) appeals from the order of the District Court of the Fourth Judicial District granting summary judgment to Monroe Property Company. We reverse.

## BACKGROUND

¶2    This case arose over a decade ago when David Lipson, principal of the approximately 10,000-acre Paws Up Angus Ranch and Paws Up Horse Ranch in Missoula County, Montana, engaged DAC to construct buildings, roads and other improvements on the Ranch. Lipson projected that the work would cost approximately $10 million, and when DAC did not get paid for the last approximately $800,000 of billings, it filed a construction lien to secure its claim. DAC commenced a breach of contract and lien foreclosure action in 2001 and has spent the intervening years trying to bring this dispute to a conclusion and to collect the debt.

¶3    David Lipson has been described as a shrewd and experienced businessman. *See e.g. Securities and Exchange Comm'n v. Lipson*, 278 F.3d 656 (7th Cir. 2002). When Lipson engaged DAC for the Paws Up construction project in April, 2000, he entered a written contract with DAC on behalf of Monroe Construction, a limited liability company formed under the laws of Delaware, with a home address in Chicago. Monroe Construction was a shell entity without any on-going assets, while the Ranch itself was owned by another Lipson entity called Monroe Property, an LLC organized under the laws of Nevada. Lipson controlled both entities and testified that his intent was that

Monroe Construction would contract with DAC and pay for the cost of the improvements at the Ranch, using money drawn from various sources within the Lipson organization. Monroe Property owned the Paws Up ranch at all relevant times, and when each phase of the construction was substantially completed, Monroe Construction sold that phase to Monroe Property for cost plus a 5% "contractor's fee."

¶4 At the time Lipson entered the construction contract with DAC, there was no written agreement between Monroe Construction and Monroe Property evidencing the arrangement that Monroe Construction would sell the phases of the DAC job as they were completed. In August, 2002, after this litigation was well under way, Monroe Construction and Monroe Property entered a written agreement purporting to memorialize the arrangement. It was "dated as of" March 9, 2000, and David Lipson signed the document as President of Monroe Property, LLC, and as President of Monroe Construction, LLC and as "manager" of DEL Investments Corporation. Lipson testified that DEL is the manager of Monroe Property; that Monroe Property is a single-member LLC; that the single member of Monroe Property is Monroe Capital Partners, LLC, and that he is the representative of the manager DEL. He also testified that he was not employed by Monroe Property and that neither it nor Monroe Construction has any employees or any ownership interest in the other entity. He testified that Monroe Property operates under the assumed names of Paws Up Angus Ranch, Paws Up Cattle Company and Paws Up Horse Ranch. It is clear that Lipson controlled Monroe Property, Monroe Construction, DEL Investments, and the Paws Up operations.

3

¶5 Neither Lipson nor the Monroe entities presented any explanation for the necessity or utility of the complicated structure of these entities. Whatever the effect of these intertwined entities may have been, one clear result was to isolate David Lipson, individually, and Monroe Property, as the titleholder of the Paws Up property, from direct contracts with contractors such as DAC. Monroe Construction by design had no discernable assets. They admitted in the District Court proceedings that one of the reasons for the structure was to make it judgment proof and to protect the Paws Up land itself from liens. This has been successful for a decade. Nevertheless, the individual that DAC dealt with throughout its project was David Lipson. Lipson had detailed discussions with DAC's representative leading up to execution of the construction contract. Lipson signed the contract with DAC on behalf of Monroe Construction, and the contract designated the "project" as "Paws Up Angus Ranch, Greenough, Montana," the land owned by Monroe Property.

¶6 During the construction phase, DAC personnel dealt with Lipson regularly and often. One of the many proceedings that has been held in the effort to conclude the DAC claim was an arbitration that took place in November, 2005 and which included a nine-day evidentiary hearing. The arbitrators in their written decision found that there were never any complete or detailed plans for the work that DAC was to complete, and that the costs of the project were not detailed cost estimates that DAC could rely on but were just budget estimates provided by Lipson. After DAC began work, its representatives warned Lipson about the increase in the estimated costs caused by the absence of complete plans and the "many changes that were being directed by Lipson." Lipson and his wife met

4

with DAC representatives weekly to provide directions on what they wanted done, and DAC would direct its crews accordingly. DAC representatives testified that this led to inconsistent and untimely instructions from the Lipsons, and that meeting the Lipsons' changing expectations resulted in completed work being torn out and reconstructed. The evidence showed that between August, 2000 and March, 2001, Lipson directed 41 changes or additions to the plumbing and 113 pages of changes to the work done on the equestrian center. The arbitration panel found that the "skyrocketing costs" experienced toward the end of the project "were the result of the changes and expansions directed by Dave Lipson."

¶7 Monroe Construction paid DAC through the April 30, 2001 invoice, a total of $10,339,223. Monroe did not pay DAC's June and July, 2001 invoices, which totaled $894,607. In July, 2001 DAC filed a construction lien against the property and in September, 2001 DAC sued Monroe Construction for breach of contract and Monroe Property to foreclose the lien. The Monroe entities responded with several counterclaims for constructive fraud, misrepresentation, negligence and breach of contract.

¶8 In 2002, the District Court denied Monroe's motion for summary judgment and upheld the validity of DAC's construction lien. In May, 2004, the District Court upheld the validity of the lien against further Monroe contentions that it was technically deficient. The District Court also dismissed all of Monroe's tort-based counterclaims, leaving only the breach of contract counterclaim by Monroe Construction. These rulings have not been appealed.

¶9     The Monroe entities then moved to compel arbitration under the construction contract, and in March, 2005 the District Court ordered that the parties participate in arbitration. The arbitration proceeded with DAC and Monroe Construction only and included the nine-day evidentiary hearing, the only one held in any proceeding connected with this matter. In December, 2005 the arbitrators awarded DAC $802,661 in damages; $309,729 in interest; $33,186 in costs and $331,892 in attorney fees against Monroe Construction.[1]

¶10    DAC returned to District Court and moved for an entry of judgment against Monroe Construction on the arbitration award and for summary judgment against Monroe Property on the foreclosure of the construction lien. The District Court entered two orders on March 16, 2007. The first granted DAC's motion to confirm the arbitration award in its favor and denied the motion of the Monroe entities to vacate or modify the award. The primary issue regarding the confirmation was the arbitration panel's award of attorney fees to DAC. In addition, the Monroe entities contended that the panel exceeded its authority by making findings and conclusions regarding the construction lien.

---

[1] The arbitrators also found against Monroe Construction on its claims for breach of contract and for fraud, concluding that they "were so totally devoid of merit as to constitute bad faith under the circumstances of this case. These claims appear to have been interposed only to hinder and delay the progress of this case." The arbitrators also found against Monroe Construction on its defamation claim, which was based on a letter from DAC to one of its subcontractors in which DAC stated that Dave Lipson "had not been honest in his dealings with DAC." The arbitrators found first that this was only a statement of opinion based upon disclosed facts, and that in any event the statement was not defamatory because it was true.

¶11   In the second March 16, 2007 order the District Court granted DAC's motion for summary judgment against Monroe Property on the construction lien. In doing so the District Court held in favor of DAC on the Monroe entities' arguments that there were absent necessary parties; that the lien did not properly identify the land at issue; and that the lien did not properly identify the improvements at issue.

¶12   In May, 2007, the District Court followed up on the March 16 orders and entered a final judgment against Monroe Construction on the arbitration award in the amount of $1,632,961.14. The District Court also entered a final judgment against Monroe Property foreclosing the lien and ordered that the real property of the Paws Up Ranch be sold to satisfy the claim.

¶13   Monroe appealed to this Court, and we affirmed in part and reversed in part. *Dick Anderson Const., Inc. v. Monroe Construction*, 2009 MT 416, 353 Mont. 534, 221 P.3d 675 (*DAC I*). First, this Court upheld the District Court's order confirming the amount of the arbitration award against Monroe Construction, including the attorney fees. Next this Court rejected Monroe Property's argument that it was a third party beneficiary of the Monroe Construction-DAC construction contract so as to be entitled to raise claims and defenses regarding the contract. Finally, this Court reversed the District Court's order foreclosing the construction lien on the ground that the order improperly relied on the arbitration panel's advisory findings concerning the lien. This Court concluded that Monroe Property's "statutory defenses on the construction lien issue" involving issues of whether the lien was "properly and timely filed against Monroe Property's real property" remained to be litigated.

7

¶14 On remand to the District Court, in May, 2010 Monroe Property again raised technical issues concerning the validity of the lien by moving for summary judgment against DAC on the issue of the validity of the construction lien. Monroe Property argued that since it was not a party to the construction contract with DAC and was not a third party beneficiary of the construction contract, it was not a "contracting owner" under § 71-3-522(4)(a), MCA, against whom the lien could be foreclosed. DAC argued that Monroe Construction was an agent of Monroe Property and that therefore the lien was enforceable. The District Court concluded that Monroe Property and Monroe Construction were separate entities; that DAC "failed to establish" that Monroe Construction was an agent of Monroe Property; and that the lien was enforceable only as to Monroe Construction's interest in the real property, which did not exist. The District Court further held that "DAC's lien extended only to the improvements it constructed for Monroe Construction, not to the real property owned by Monroe Property." The District Court then concluded that the construction lien was "invalid" and unenforceable. The District Court reserved any ruling on DAC's quantum meriut claim against Monroe Property.

¶15 DAC appeals. While DAC raises several issues on appeal, we find the issue regarding the existence of an agency relationship between Monroe Property and Monroe Construction to be dispositive, and therefore do not reach the others.

## STANDARDS OF REVIEW

¶16 The District Court disposed of this matter on summary judgment. This Court reviews a district court's decision on summary judgment de novo, examining whether the

8

decision correctly found that there were no genuine issues of fact and that the moving party was entitled to judgment as a matter of law. All reasonable inferences that may be drawn from the evidence must be drawn in favor of the party opposing summary judgment. *Talmage v. City of Kalispell*, 2009 MT 434, ¶ 12, 354 Mont. 125, 223 P.3d 328. We review legal conclusions reached by a district court to determine whether the court erred. *Poole v. Poole*, 2000 MT 117, ¶ 13, 299 Mont. 435, 1 P.3d 936.

## DISCUSSION

¶17 Montana law provides "for the attachment and enforceability of a construction lien against real estate in favor of a person furnishing services or materials under a real estate improvement contract." Section 71-3-521, MCA. The purpose of the lien is to secure the payment of the contract price for construction work. Section 71-3-523, MCA. "A construction lien extends to the interest of the contracting owner in the real estate, as the interest exists at the commencement of work or is subsequently acquired. . . . " Section 71-3-525, MCA. A "contracting owner" is a "person who owns an interest in real estate and who personally or through an agent, enters into an express or implied contract for the improvement of the real estate." Section 71-3-522(4), MCA. The statutes contain specific requirements for notice, §§ 71-3-531 and -532, MCA, and for filing, §§ 71-3-534 and -535, MCA.

¶18 The procedural requirements of the lien statutes exist to notify the real property owner that a lien has been filed against the property and to protect other parties dealing with the property. *Johnston v. Palmer*, 2007 MT 99, ¶ 40, 337 Mont. 101, 158 P.3d 998. When the strict requirements of the lien statutes are met, the statutes will be liberally

9

construed to give effect to their remedial purpose. *Gaston Engineering & Surveying v. Oakwood Properties*, 2011 MT 44, ¶ 14, 359 Mont. 341, 249 P.3d 75; *Swain. v. Battershell*, 1999 MT 101, ¶ 26, 294 Mont. 282, 983 P.2d 873.

¶19 Throughout this litigation, until the order appealed from, the District Court has held that the DAC lien satisfies the strict procedural requirements of the statutes. The issue that Monroe Property raises in this appeal is whether it is a "contracting owner" under the lien statutes. We conclude that it is.

¶20 Monroe Property argues that it is not a "contracting owner" under the definition of that term in § 71-3-522(4)(a), MCA. Monroe Property argues that it was not a contracting owner because it did not enter the construction contract with DAC, but rather that Monroe Construction, a completely "separate entity," did so. Monroe Property further asserts that there is "no evidence" of any agency relationship between the two Monroe entities and that Monroe Construction did not act as its agent. The District Court adopted those positions in the summary judgment order underlying this appeal.

¶21 An agent is one who represents another, § 28-10-101, MCA, and agency is either actual or ostensible, § 28-10-103(1), MCA. An actual agency occurs when the agent is "really employed" by the principal, and is ostensible when the principal "intentionally or by want of ordinary care causes a third person to believe another to be the principal's agent when that person is not really employed by the principal." Section 28-10-103(1), MCA. Agency may be created and authority to act conferred by prior authorization or subsequent ratification, and consideration is not required to create an agent's authority. Sections 28-10-201 and -202, MCA. An agent represents the principal and the rights and

10

liabilities that accrue from the agent's acts accrue to the principal. Section 28-10-601, MCA.

¶22 A court may review the record to determine whether there is sufficient evidence of agency, *Butler Mfg. Co. v. J & L Implement Co.*, 167 Mont. 519, 523, 540 P.2d 962, 965 (1975), and the existence of agency may be implied from conduct and from all the facts and circumstances of the case. *Butler Mfg.*, 167 Mont. at 524, 540 P.2d at 965. When a party contends there is an ostensible agency, the principal must have undertaken some act to lead the other party to believe that an agency existed, even if it did not exist in fact. *Miller v. Cascade N. Co.*, 181 Mont. 66, 69, 592 P.2d 156, 158 (1979). A belief in ostensible agency must be reasonable, *Larson v. Barry Smith Logging*, 267 Mont. 444, 447, 884 P.2d 786, 788 (1994).

¶23 The facts of this case demonstrate that Monroe Construction was the actual agent of Monroe Property for the purpose of engaging DAC to complete construction work on Monroe Property's Paws Up Ranch. Monroe Property nominally owns the Paws Up Ranches. David Lipson controls and manages Monroe Property and the Paws Up Ranches. David Lipson created Monroe Construction to facilitate the construction of improvements at the Paws Up Ranches. Lipson's intent at the time of the DAC contract was that Monroe Construction would be designated as the contracting entity and, upon substantial completion of various portions of the work would pay DAC and in return sell the completed portion of the work to Monroe Property.

¶24 The construction contract with DAC recited that Monroe Construction was "the Owner" and that "the Project is: Paws Up Angus Ranch, Greenough, Montana." Lipson

11

signed the contract for Monroe Construction. Throughout the negotiations leading up to the contract and the construction of the projects at the Ranch, DAC dealt personally with Lipson. In 2002, after this litigation began, Monroe Property and Monroe Construction entered a written agreement on the face of which Monroe Construction agreed to sell to Monroe Property the improvements constructed by DAC. David Lipson signed the agreement for both Monroe entities, as president of DEL Investments Corporation, listed as the manager of both entities. A purpose of creating Monroe Construction was to establish an entity to contract with third persons such as DAC, but which entity would have no on-going assets against which liens or judgments could be levied.

¶25 The District Court's recitation of the "undisputed material facts" was more than sufficient to support the legal conclusion that Monroe Construction was the agent of Monroe Property. The only reasonable conclusion of law to be drawn from the undisputed facts is that Monroe Construction was created to act and did act as the agent of Monroe Property for the purpose of contracting for improvements to the Paws Up Ranch. Monroe Property has not made any compelling argument that there was no agency, instead repeatedly stating that Monroe Construction was a "separate entity." It also argues that had Monroe Construction been an agent of Monroe Property, then Monroe Property as the principal would have been allowed to challenge the contract between Monroe Construction and DAC, which this Court disallowed in *DAC I*, ¶ 50. The issue considered in that case, however, was whether Monroe Property was a third party beneficiary of the construction contract, and not whether Monroe Construction was an agent of Monroe Property. The third party beneficiary issue was not determinative of

12

agency. Monroe Property acknowledged in *DAC I* that Monroe Construction served as a general contractor on the Paws Up project and hired DAC to improve the property. It is undisputed that this was done for the benefit of Monroe Property and with its approval.

¶26 Moreover, it is clear that if the Monroe Property-Monroe Construction arrangement (in which an asset-free shell entity with no title to real property is the contracting entity for real property improvements) were adopted as a model by others, there would be no enforceable construction liens. Monroe tries to refute this issue by contending that all a contractor has to do is to enter a contract with the owner of the real property. Under the Monroe Property-Monroe Construction model, as DAC has found, this can be difficult. The remedial purposes of the construction lien statutes—including providing payment security for contractors who construct improvements to real property—would clearly be frustrated by adopting Monroe Property's position.

¶27 The undisputed facts establish that Monroe Construction was an agent of Monroe Property for the purpose of contracting with DAC to build improvements on Monroe Property's Paws Up Ranches. Therefore, under § 71-3-522, MCA, Monroe Property, acting through its agent Monroe Construction, was a "contracting owner" with regard to the construction contract with DAC. The District Court's conclusion of law to the contrary was error, and the order on summary judgment is hereby reversed.

¶28 Monroe Property had the opportunity on remand to the District Court to raise any statutory defenses it had to DAC's assertion of a construction lien. Monroe Property did so, contending that it was not a contracting owner and that the lien was invalid. Having resolved this issue against Monroe Property and in favor of DAC, no issues remain to be

13

decided as to the validity of the DAC lien.[2]  We therefore reinstate the Final Money Judgment and Final Judgment Foreclosing Construction Lien in favor of DAC and against Monroe Property previously entered in this matter, dated April 30, 2007 and filed May 1, 2007.  DAC may foreclose its construction lien in the amounts provided in that judgment.

¶29     Reversed.

/S/ MIKE McGRATH

We concur:

/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JIM RICE

---

[2] DAC's alternative quantum meriut claim is rendered moot by this decision.