DA 23-0046

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 240

STAND UP MONTANA, a Montana non-profit Corporation;
CLINTON DECKER; MORGEN HUNT; GABRIEL EARLE;
ERICK PRATHER; BRADFORD CAMPBELL; MEAGAN CAMPBELL;
AMY ORR and JARED ORR,

        Plaintiffs and Appellants,

    v.

MISSOULA COUNTY PUBLIC SCHOOLS, ELEMENTARY
DISTRICT NO. 1, HIGH SCHOOL DISTRICT NO. 1, MISSOULA COUNTY,
STATE OF MONTANA; TARGET RANGE SCHOOL DISTRICT NO. 23; and
HELLGATE ELEMENTARY SCHOOL DISTRICT NO. 4,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Fourth Judicial District,
                   In and For the County of Missoula, Cause No. DV-21-1031
                   Honorable Jason Marks, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Quentin M. Rhoades, Rhoades & Erickson PLLC, Missoula, Montana

        For Appellees:

                Elizabeth A. Kaleva, Kevin A. Twidwell, Elizabeth O'Halloran, Kaleva
                Law Offices, Missoula,

                           Submitted on Briefs: September 27, 2023

                                  Decided: December 12, 2023

Filed:

                         _____
                                  Clerk

FILED

12/12/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0046

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Stand Up Montana (Stand Up) and parents of multiple school children attending public schools in Missoula County (Parents) appeal the Order entered by the Fourth Judicial District Court granting summary judgment in favor of school districts in Missoula County (School Districts), and finding the mask mandates implemented by the School Districts did not violate Appellants' substantive due process rights.

¶2 We restate the issues on appeal as follows:

1. *Did the District Court properly grant summary judgment in favor of the School Districts on Stand Up's Substantive Due Process Claim?*

2. *Did the District Court properly grant the School Districts' motion in limine to exclude proffered testimony from Appellants' hybrid witnesses?*

¶3 We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 During the Summer of 2021, and amid the COVID-19 pandemic, the School Districts considered polices to ensure a safe return to full-time, in-class learning for the 2021-2022 school year. The School Districts chose to implement a mask mandate that required everyone who entered the schools—students, staff, teachers, visitors, and volunteers—to wear a mask at all times. There were exceptions to the mask mandate that allowed masks to be removed during physical exercise or recess, giving presentations, and eating or drinking. In adopting the mandate, the School Districts considered recommendations from several sources including the Centers for Disease Control (CDC), the American Academy of Pediatrics, the Montana Medical Association, the State and Missoula City and County health agencies, and various other health care entities and

practitioners. The School Districts also considered national and local health data and received extensive public comment both by email and from in-person presentations.

¶5 Stand Up and Parents (collectively Appellants) challenged the mask mandates in August 2021. Appellants filed a six-count lawsuit against the School Districts claiming the mask mandates violated their constitutional rights.[1] Appellants also filed a motion for a preliminary injunction to enjoin enforcement of the mask mandates. The District Court denied the motion for preliminary injunction. Appellants appealed to this Court asserting they made a prima facie showing their privacy and dignity rights were violated by the School Districts' masking policies and, as a result, they suffered irreparable harm. As we noted, the Montana Constitution contains an explicit right to privacy in Art. II, Section 10 "and because it is found in the Constitution's Declaration of Rights, it is a fundamental right." *Stand Up Mont. v. Missoula Cnty. Pub. Schs.*, 2022 MT 153, ¶ 11, 409 Mont. 330, 514 P.3d 1062 (*Stand Up I*). We also noted the Montana Constitution contains an individual dignity provision—Art. II, Section 4—which "works in tandem with Article II, Section 22 to provide individuals greater protection from cruel and unusual punishment than does the federal constitution." *Stand Up I*, ¶ 11.

¶6 In considering Appellants' privacy claim, we noted that central to their argument was their characterization of face masks as medical treatment which Appellants described as "treatment by alleged prevention." We determined this to be an attempt to apply

---

[1] Specifically, the claims were: Count I—substantive due process; Count II—equal protection; Count III—privacy; Count IV—Senate Bill 400 (now codified as Mont. Code Ann. § 40-6-701); Count V—human dignity; and Count VI—freedom of expression.

principles governing private medical decisions to public prevention practices and that even if masks could be considered "medical devices," no evidence had been presented that masks constituted treatment for COVID-19, "rather than merely a protective measure to reduce the chance an individual becomes infected with or spreads the virus in a public place." *Stand Up I*, ¶ 15. Appellants did not demonstrate that schools requiring face masks to ensure the safety and health of students, visitors, and staff voluntarily on public property during a recognized pandemic implicated the same private decisions addressed in *Armstrong v. State*, 1999 MT 261, 296 Mont. 361, 989 P.2d 364 or *Gryczan v. State*, 283 Mont. 433, 942 P.2d 112 (1997). *Stand Up I*, ¶ 16. As such, we concluded Appellants' arguments were insufficient to conclude the District Court manifestly abused its discretion by denying Appellant's request to enjoin the School Districts' masking policies on the grounds that the privacy right under Article II, Section 10 of the Montana Constitution was likely to have been violated. *Stand Up I*, ¶ 16.

¶7 Appellants' individual dignity claim was premised on *Walker v. State*, 2003 MT 134, 316 Mont. 103, 68 P.3d 872. *Walker* involved a severely mentally and physically ill inmate subjected to interventions at the prison that deprived him of basic necessities— isolating him and forcing him to sleep on a concrete slab in a cell containing human waste and blood. While Appellants faulted the District Court for focusing on the factual distinctions between *Walker* and this matter, we noted "the facts in *Walker* were critical to the holding there."[2] *Stand Up I*, ¶ 18. Given this precedent, we determined the District

---

[2] The inconvenience associated with wearing a mask, is on the other end of the spectrum from the deprivation of basic human needs experienced by Walker.

Courts did not "manifestly abuse their discretion by determining Appellants did not establish a likelihood the [School] Districts' masking policies for public schools would violate the Appellants' rights under Article II, Section 4, of the Montana Constitution." *Stand Up I*, ¶ 18.

¶8 As Appellants did not make a prima facie showing that the masking policies implicated a fundamental right under Article II of the Montana Constitution, we determined it appropriate to review the policies under the rational basis standard—considering whether the challenged policies bear a rational relationship to a legitimate government interest. *Stand Up I*, ¶ 19. Under rational basis review, the masking policies do not need to be logically consistent in every respect to be constitutional, and they will be upheld unless they are unreasonable or arbitrary. *Mont. Cannabis Indus. Ass'n v. State*, 2016 MT 44, ¶ 26, 382 Mont. 256, 368 P.3d 1131 (*MCIA II*). As we noted in *Stand Up I*, given the U.S. Supreme Court's determination in *Roman Catholic Diocese v. Cuomo*, 141 S. Ct. 63, 67, 208 L.Ed.2d 206 (2020), that "[s]temming the spread of COVID-19 is unquestionably a compelling [governmental] interest" there is little doubt the School Districts' objectives of containing the spread of COVID-19 among students and adults within the school system would be found to be a legitimate governmental interest. *Stand Up I*, ¶ 20. While Appellants asserted masking to be ineffective and there was a relatively low death rate among minors from COVID-19, the "policies were adopted after consideration of a wide body of health information and recommendations from public and private sources that encouraged continuation of universal masking policies." *Stand Up I*, ¶ 22. Given the School Districts' safety concerns beyond mortality risk—including reducing interruption

to learning for students and teachers infected with COVID-19—we concluded "the policies would appear to bear a rational relationship to School Districts' legitimate interest in preventing infections among teachers, staff, and volunteers to ensure sufficient staffing levels are available for the schools to function properly." *Stand Up I*, ¶ 22. As such, we concluded the District Courts did not manifestly abuse their discretion in concluding it was likely the mask policies were rationally related to legitimate government interests. *Stand Up I*, ¶ 23.

¶9 Lastly, Appellants asserted the Gallatin County District Court erred in its interpretation of § 40-6-701, MCA, and abused its discretion by denying Appellants' motion for a preliminary injunction on the grounds the masking policies likely did not violate Parents' rights. The District Court, despite an initially incorrect interpretation[3] of § 40-6-701, MCA, in alternative to its statutory findings, applied a strict scrutiny framework to conclude the mask policy was justified by a compelling interest. Appellants did not challenge the District Court's application of strict scrutiny review but instead asserted the School Districts failed to offer a compelling governmental interest. We noted that Appellants acknowledged in their briefing that the only reason the mask policies were adopted was to address the spread of COVID-19, which the U.S. Supreme Court had

---

[3] The District Court reviewed the legislative history of § 40-6-701, MCA, and concluded the purpose of enacting the legislation was to create an action for parents involved in a child welfare proceeding involving the termination of parental rights and thus not applicable under the circumstances here. We determined the District Court erred by considering legislative history to guide its interpretation as the statute, from a plain reading, contained no language limiting a cause of action for parents involved in a child welfare proceeding.

6

already defined as a compelling interest. Thus, we found no error in the District Court's alternative constitutional strict scrutiny analysis.

¶10 On September 21, 2021, the School Districts filed a motion to dismiss all six of Appellants' claims for failure to state a claim upon which relief can be granted. While that motion was before the court, the School Districts also filed a motion in limine to exclude Stand Up's hybrid[4] witnesses from testifying at trial based on the fact that the individual plaintiffs had each testified in their depositions that their children had not been diagnosed with any of the harms Appellants' experts asserted were caused by wearing face masks at school. On October 31, 2022, the District Court granted the School District's motion to dismiss for all but one of the six counts for failure to state a claim. Appellants' substantive due process claim was left for trial—although the District Court determined the mask policies were related to a legitimate government interest, it could not, on the pleadings alone, conclude Appellants could prove no set of facts which would entitle them to relief. The narrow issue that remained for trial was whether the mask mandates were unreasonable or arbitrary when balanced against the purpose of slowing the spread of COVID-19.

¶11 The District Court also granted the School Districts' motion in limine on November 1, 2022. The court held the testimony of the challenged witnesses proffered by Appellants was irrelevant to the central issue of the case. The court stated "testimony concerning whether masking causes the maladies outlined by [Appellants'] proffered testimony (e.g., tooth decay, halitosis, speech impediments) will not assist the Court in

---

[4] In this context, a hybrid witness is one identified both as a lay witness and an expert witness.

resolving the factual dispute, which is centered around the reasonableness of the mandates as related to the goal of stopping COVID-19."

¶12 With only the substantive due process claim remaining, following discovery, the School Districts filed a motion for summary judgment. The School Districts argued that despite Appellants' assertion that mask mandates did not prevent the spread of COVID-19 and had negative effects on student wellbeing and education, evidence as to mask efficacy did not create a material issue of fact as such evidence did not have any bearing on whether the mask policies were rationally related to the government's legitimate interest of slowing the spread of COVID-19. The District Court granted the School Districts' motion for summary judgment on Appellants' substantive due process claim on December 20, 2022. In this order, the District Court noted it had already determined the mask mandates were related to a legitimate government interest—slowing the spread of COVID-19. The court then noted, citing *Jacobsen v. Massachusetts*, 197 U.S. 11, 25 S. Ct. 358 (1905), a deferential standard of review in assessing whether the mandate was rationally related to slowing the spread of COVID-19 was appropriate. In *Jacobson*, the U.S. Supreme Court applied a deferential standard of review rejecting a substantive due process challenge to mandatory smallpox vaccination, concluding mandatory vaccination was constitutional as it had a real and substantial relation to protection of public health and safety.

¶13 The District Court noted the mask mandate required any person, not just students, who entered a school building to wear a mask. Further, Appellants did not dispute the School Districts enacted the mask policies after considering recommendations from the CDC, the American Academy of Pediatrics, the Montana Medical Association, the

8

Missoula City/County Health Departments, and other state and local health care providers and agencies all of which recommended universal masking of all individuals who entered a school building. The District Court noted the agencies and providers consulted by the School Districts were reputable and specifically that the CDC is recognized as "the nation's leading science-based, data-driven, service organization that protects the public's health." The District Court reasoned that continued emphasis on alleged negative impacts of masking on students is unpersuasive and irrelevant in a substantive due process analysis as the School Districts' reliance on the recommendations of reputable health providers and agencies, including the CDC, was not unreasonable or arbitrary even if Appellants presented existence of studies offering alternate views on the efficacy of masking or negative effects on student wellbeing. As such, the District Court found the mask mandates were reasonably related to the legitimate government interest of slowing the spread of COVID-19 based on uncontested facts as to which agencies and health providers were consulted and their uncontroverted recommendation for universal masking of all individuals entering school buildings. Thus, the District Court granted summary judgment to the School Districts on the remaining substantive due process claim.

¶14 Stand Up and Parents now appeal the District Court's award of summary judgment and, likewise, challenge the District Court's granting of the School Districts' motion in limine that precluded the testimony of hybrid witnesses proffered by Appellants as irrelevant.

**STANDARD OF REVIEW**

¶15 This Court reviews a district court's award of summary judgment de novo for conformance with the standards of M. R. Civ. P. 56. *Dick Anderson Constr., Inc. v. Monroe Prop. Co.*, 2011 MT 138, ¶ 16, 361 Mont. 30, 255 P.3d 1257. Summary judgment is proper only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3). A genuine issue of fact is a fact materially inconsistent with proof of an essential element of a claim or defense. *Mt. W. Bank, N.A. v. Mine & Mill Hydraulics, Inc.*, 2003 MT 35, ¶ 28, 314 Mont. 248, 64 P.3d 1048.

¶16 A district court's decision on a motion in limine is an evidentiary ruling that this Court reviews for an abuse of discretion. *State v. Edwards*, 2011 MT 210, ¶ 12, 361 Mont. 478, 260 P.3d 396. An abuse of discretion occurs when a district court acts arbitrarily, without conscientious judgment, or exceeds the bounds of reason. *State v. Hudon*, 2019 MT 31, ¶ 16, 394 Mont. 226, 434 P.3d 273.

**DISCUSSION**

¶17 *1. Did the District Court properly grant summary judgment to the School Districts on Stand Up's Substantive Due Process Claim?*

**Applicable Level of Scrutiny**

¶18 Appellants argue the District Court should have used a strict scrutiny standard instead of a rational basis standard in analyzing the viability of their constitutional substantive due process claim. Appellants assert the mask mandates infringe on students' and Parents' fundamental rights—students' rights of privacy and individual dignity and

Parents' rights to control the care and custody of their children. Accordingly, Appellants advocate for the Court to use strict scrutiny.

¶19 When a fundamental right is not implicated, substantive due process analysis requires rational basis review. *MCIA II*, ¶ 21. We examine substantive due process claims by looking at whether (1) the policy in question is related to a legitimate government concern, and (2) the means chosen by the governmental entity to accomplish its objective are reasonably related to the result to be obtained. *MCIA II*, ¶ 21.

¶20 As we noted in *Stand Up I*, Appellants have not demonstrated the masking mandates implicate a fundamental right found in Article II of the Montana Constitution. *Stand Up I*, ¶ 19. We elaborated at length that Appellants cannot apply principles governing private medical decisions to public prevention practices. *Stand Up I*, ¶ 15. We explained there was no evidence that facial coverings constitute a medical treatment for COVID-19, rather they are a protective measure to reduce the chance of spreading the virus in a public place. *Stand Up I*, ¶ 15. Accordingly, we declined to recognize that mask mandates implicate the right to privacy as recognized in *Gryczan v. State*, 283 Mont. 433, 942 P.2d 112 (1997), the right to make personal medical judgments affecting bodily integrity as recognized in *Armstrong v. State*, 1999 MT 261, 296 Mont. 361, 989 P.2d 364, or the right to reject treatment as recognized in *Mont. Cannabis Indus. Ass'n v. State*, 2012 MT 201, 366 Mont. 224, 286 P.3d 1161 (*MCIA I*). *Stand Up I*, ¶¶ 13, 19.

¶21 We further decline to recognize an impairment of the fundamental right of a parent to make decisions regarding the care of their children, including the upbringing, education, health care, and mental health of their children. Again, as we explained in *Stand Up I*,

11

"Appellants do not . . . present an argument regarding how Parents' rights to control their children's health and upbringing are violated in the context of Parents exercising that right by enrolling their children in the public schools[.]"[5]  Because the masking policies do not implicate a fundamental right, the District Court did not err in analyzing Appellants' substantive due process claim under the rational basis test.

**Summary Judgment**

¶22    Appellants argue the District Court should not have given deference to the School Districts because the competing evidence Appellants presented was sufficient to create a genuine issue of material fact and preclude summary judgment.  Appellants presented studies offering alternate views on the efficacy of masking, including studies that contradicted the CDC's advice as well as a CDC study that indicated masks are ineffective at protecting against wildfire smoke, which has larger particles than COVID-19.

¶23    The rational basis test requires that (1) there be a legitimate government interest and (2) the mask policies bear a rational relationship to the legitimate government interest.

---

[5] "*See generally Fortuna v. Town of Winslow*, No. 1:21-cv-00248-JAW, 2022 U.S. Dist. LEXIS 104678, at 37-38 (D. Me. June 13, 2022) ("Once his child is in school, Mr. Fortuna's parental rights must be measured against the equal rights of other parents to control their children and the duty of the school to provide a safe environment for all children, not just Mr. Fortuna's child, and for others who work or volunteer in the school.") (citations omitted); *Doe v. Dall. Indep. Sch. Dist.*, 194 F. Supp. 3d 551, 562 (N.D. Tex. 2016) ("[T]he right to choose what sort of school a child will attend and the right to have input on [discrete school policies] . . . are cut from different cloth.  The former is almost self-evidently a fundamental decision about the child's education, while the latter is, at best, a 'component of the educational process' that Doe is attempting to 'mask . . . with the trappings of a fundamental right and then elevate . . . to the status of a fundamental right.'") (citations omitted); *Bentonville Sch. Dist. v. Sitton*, 2022 Ark. 80, 643 S.W.3d 763, 771 (Ark. 2022) ("Parents do have a liberty interest in shaping their child's education . . . .  [But] the District's [masking] policy is not, 'beyond all question, a plain, palpable' violation of the parents' constitutional rights to care for their children." (internal citations omitted)." *Stand Up I*, ¶ 29.

*Satterlee v. Lumberman's Mut. Cas. Co.*, 2009 MT 368, ¶ 18, 353 Mont. 265, 222 P.3d 566. "In determining whether the [policy's] objective is legitimate, we examine . . . [its] purpose, whether expressly stated or otherwise." *MCIA II*, ¶ 22 (citing *Satterlee*, ¶¶ 34, 37). Here, both parties concede there is a legitimate, and even compelling, interest in slowing the spread of COVID-19. The U.S. Supreme Court has also held "[s]temming the spread of COVID-19 is unquestionably a compelling [government] interest." *Roman Catholic Diocese*, at 67. Thus, there is no question that the mask policies are related to the legitimate governmental interest of stemming the spread of COVID-19.

¶24 Next, we must determine whether the mask policies are rationally related to stemming the spread of COVID-19. *Satterlee*, ¶ 18. As noted by the District Court, in *Jacobson*, the U.S. Supreme Court applied a deferential standard of review rejecting a substantive due process challenge to mandatory smallpox vaccination, concluding mandatory vaccination was constitutional as it had a real and substantial relation to protection of public health and safety. In *Jacobsen*, the U.S. Supreme Court gave deference to a state legislature's decision to enact a mandatory smallpox vaccination and rejected the challenger's offers of proof that vaccination had no value as a means of preventing the spread of smallpox or caused other diseases of the body:

> It is no part of the function of a court or a jury to determine which one of two modes was likely to be the most effective for the protection of the public against disease. That was for the legislative department to determine in the light of all the information it had or could obtain. It could not properly abdicate its function to guard the public health and safety. The state legislature proceeded upon the theory which recognized vaccination as at least an effective if not the best known way in which to meet and suppress the evils of a smallpox epidemic that imperiled an entire population.

*Jacobson*, at 30.

¶25　The District Court found the mask mandates were rationally related to stemming the spread of COVID-19 because they were generally applicable to any person who entered a school building, and they were enacted only after consideration of recommendations from the CDC, the American Academy of Pediatrics, the Montana Medical Association, the Missoula City/County Health Departments, and other state and local health care providers and agencies, all of which recommended universal masking.

¶26　Appellants presented studies offering alternate views on the efficacy of masking, but they did not dispute that the School Districts had, prior to enactment of the mask policies, considered information and recommendations of reputable public and private health care providers and agencies, including the CDC, or that any of the reputable public and private health care providers and agencies, including the CDC, had not recommended universal masking.　Consistent with *Jacobson*, the District Court gave deference to the School Districts' decision.　The court reasoned that the School Districts considered reputable providers, including the CDC, which the court recognized as "the nation's leading science-based, data-driven, service organization that protects the public's health." Thus, the School Districts' decision to mandate masks was rationally related to stemming the spread of COVID-19 considering the guidance by leading medical professionals.　As such, the District Court properly granted the School Districts' summary judgment on Appellants' substantive due process claim.

¶27    *2. Did the District Court properly grant the School Districts' motion in limine to exclude proffered testimony from Appellants' hybrid witnesses?*

¶28    A motion in limine is a pre-trial motion to prevent irrelevant, immaterial, or prejudicial evidence from being introduced at trial. *State v. Ankeny*, 2010 MT 224, ¶ 37, 358 Mont. 32, 243 P.3d 391.

¶29    Here, the School Districts brought a motion in limine to exclude expert testimony provided by Appellants' hybrid witnesses. The proffered testimony related to specific harmful effects masking can have on children, including oral health decline and speech, communication, and swallowing deficits. Additionally, there was proffered testimony that declared remote learning deficient compared to in-person learning and testimony that one School District refused to provide any online education options at all. The District Court granted the motion concluding that "testimony concerning whether masking causes the maladies outlined by [Appellants'] proffered testimony (e.g., tooth decay, halitosis, speech impediments) will not assist the Court in resolving the factual dispute, which is centered around the reasonableness of the mandates as related to the goal of stopping COVID-19."

¶30    To support its ruling, the District Court relied on precedent that stated "for expert testimony to be relevant there must be a connection between the expert's [testimony] and fact testimony." *State v. Jay*, 2013 MT 79, ¶ 29, 369 Mont. 332, 298 P.3d 396. Additionally, the court considered whether expert testimony was sufficiently tied to the facts of the case such that it would aid the jury in resolving a factual dispute. *Jay*, ¶ 29. The District Court found the physical effects of masking, including oral health decline and speech deficits, would not aid a jury in determining whether the mask policies were

15

rationally related to stemming the spread of COVID-19. The court also pointed out, as attested in the Parents' depositions, none of their children experienced the physical maladies described by Appellants' experts. Based on the court's reasoning, it is clear it did not act arbitrarily, without conscientious judgment, or beyond the bounds of reason and did not abuse its discretion. Accordingly, we find the District Court did not abuse its discretion by granting the School Districts' motion in limine.

## CONCLUSION

¶31 As the School Districts' mask policies do not implicate fundamental rights under Article II of the Montana Constitution, the District Court appropriately reviewed the policies under the rational basis test. The District Court also appropriately granted the School Districts' summary judgment motion on Appellants' substantive due process claim based on the uncontroverted facts that the School Districts, prior to adoption of the policies, considered information and recommendations of reputable public and private health care providers and agencies, including the CDC, which all recommended universal masking. Finally, the District Court properly granted the School Districts' motion in limine to exclude hybrid witness testimony because the proffered testimony was not relevant to whether the mask policies were rationally related to stemming the spread of COVID-19.

¶32 Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR