FILED

04/30/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0396

DA 23-0396

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 91N

GWENDOLYN J. GERBER,

> Plaintiff, Counter Defendant,
> and Appellee,

v.

DIEGO S. DAVALOS and AMBER K. FAZENDIN,

> Defendants, Counter Claimants,
> and Appellants.

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and For the County of Missoula, Cause No. DV-23-7
                Honorable Leslie Halligan, Presiding Judge

COUNSEL OF RECORD:

> For Appellant:

> Thomas C. Orr, Orr McDonnell Law, PLLC, Missoula, Montana

> For Appellee:

> Julie Rachel Sirrs, Shelby K. Towe, Boone Karlberg P.C., Missoula,
> Montana

Submitted on Briefs:  March 13, 2024

Decided:  April 30, 2024

Filed:

_____
                        Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Diego Davalos and Amber Fazendin ("Diego" and "Amber") appeal from the June 6, 2023 Order of the Fourth Judicial District Court, Missoula County, that denied their motion for summary judgment and granted summary judgment in favor of Gwendolyn Gerber (Gwen). The parties dispute the interpretation of an agreement setting forth the distribution of sale proceeds from a property held by the parties as tenants in common. We affirm.

¶3 In 2021, Jeremy Kinross-Wright passed away, leaving his real property on Pokey Lane, Missoula, Montana to his children and domestic partner, Gwen. Gwen lived at the property for years with him, and to continue living there after his death, she needed to purchase the property from the estate. Gwen decided to purchase the property with the help of her niece, Amber, and her niece's husband, Diego. Amber and Diego were living in Virginia at the time and decided to move in with Gwen when they purchased the property together.

¶4 The three parties executed a buy-sell agreement with the estate on May 4, 2022, and executed an amendment to that agreement on July 14, 2022—the amendment changed their

ownership relationship from joint tenants with rights of survivorship to tenants in common. On July 19, 2022, the parties executed an agreement that set forth each party's rights and obligations as tenants in common. The agreement states:

> WHEREAS, Gwen is contributing $233,375.03 to the purchase of the Real Property and Amber and Diego are contributing $17,000.00; and
>
> WHEREAS, the parties intend to obtain a loan secured by the Real Property ("the Mortgage") in the amount of $560,000.00, of which the parties agree 30.68% shall be considered as debt for which Gwen is responsible and 69.32% shall be considered as debt for which Amber and Diego are responsible; and
>
> WHEREAS, the parties have made the above-described contributions to the purchase of the Real Property based on their mutual intention that Gwen will be the owner of fifty percent (50%) of the Real Property and Diego and Amber combined will be the owner of fifty percent (50%) of the Real Property; and
>
> WHEREAS, the parties wish to clarify further details regarding their coownership of the Real Property.
>
> NOW, THEREFORE, the parties agree as follows:
>
> 1. Title to the Real Property shall reflect that Gwen owns her fifty percent (50%) interest as a tenant in common with Amber and Diego.
>
> 2. All expenses related to the Real Property, including but not limited to utilities, maintenance, property taxes and insurance, shall be paid for fifty percent (50%) by Gwen and fifty percent (50%) by Amber and Diego.

¶5 Shortly after the parties purchased the property and moved in together, unhappy differences arose between the parties. They discussed selling the property, but disagreed on how they would divide the sale proceeds. As a result, Gwen filed a complaint seeking a declaration of her rights under the agreement and specifically argued that, as per the agreement, she is only obligated to pay for 30.68% of the mortgage. Amber and Diego filed a counterclaim asserting Gwen is only entitled to 50% of the equity upon sale of the

house.[1]  By the time the matter came before the District Court, a sale of the property was pending.  Both parties filed motions for summary judgment.

¶6     The District Court ruled in favor of Gwen, reasoning the plain language of the agreement provided a straightforward application to the sale proceeds.  The court determined:

> When the Property is sold, each of the parties is entitled to half of the amount that the purchaser is paying for it.  Because the parties, as the sellers, must pay the sales commission, the sales commission qualifies as an expense related to the Property for which both are equally responsible.  This amount comes out of the parties' respective halves of the purchase amount.  The parties must also pay the remaining mortgage loan amount from the proceeds.  The Agreement requires Gwen pay 30.68% of it, and Amber and Diego to pay 69.32% of it.  This amount also comes out of the parties' respective halves of the purchase amount.  Whatever each party has left over from their respective halves, they get to keep, subject to other commitments not relevant here.

The District Court also awarded attorney fees in favor of Gwen according to the attorney fee provision in the agreement that stated "[i]n the event any party takes legal action to enforce the terms of this Agreement, the prevailing party shall be entitled to have his or her reasonable attorney fees and related costs of such action paid by the non-prevailing party."  The District Court determined Gwen to be the prevailing party and awarded fees accordingly.  Amber and Diego appeal.

---

[1] Equity is the value of a home minus the outstanding mortgage balance.  Thus, Amber and Diego assert they are entitled to 50% of the net proceeds after the home is sold and mortgage paid from the sale proceeds, rather than 50% of the sale proceeds with an obligation to pay 69.32% of the mortgage from those sale proceeds.

¶7 The issue before the Court is whether the District Court correctly determined the agreement requires the parties to pay differing percentages of the mortgage debt upon the sale of the real property. We review district court summary judgment rulings de novo for conformance to the applicable standards specified in M. R. Civ. P. 56. *Dick Anderson Constr., Inc. v. Monroe Prop. Co.*, 2011 MT 138, ¶ 16, 361 Mont. 30, 255 P.3d 1257. Summary judgment is proper only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3).

¶8 On appeal, Gwen asserts the appellants ignore the unambiguous provisions of the agreement that state the parties' differing responsibilities for the mortgage and downpayment contributions. Gwen argues the appellants try to isolate the 50/50 ownership provision without reading the agreement as a whole. However, according to Gwen, "only by reading these 'whereas' clauses together does 50/50 ownership even make sense: Gwen's larger downpayment was offset by Diego and Amber's larger responsibility for the mortgage debt."

¶9 Amber and Diego argue the District Court erred by letting the mortgage clause prevail over the general intent of the agreement, which was that Gwen would be the owner of 50% of the property and Amber and Diego together would own 50% of the property—not subject to the mortgage. Amber and Diego assert "the Parties acknowledge that the contributions, plural, were made 'based on their mutual intention' for 50/50 ownership."

¶10 In Montana, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is

5

ascertainable and lawful." Section 28-3-301, MCA. "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible." Section 28-3-303, MCA. "The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable, each clause helping to interpret the other." Section 28-3-202, MCA. "The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity." Section 28-3-401, MCA. "An ambiguity exists when the contract language, taken as a whole, could reasonably be given two different meanings." *Krajacich v. Great Falls Clinic, LLP*, 2012 MT 82, ¶ 19, 364 Mont. 455, 276 P.3d 922.

¶11 It is presumed that shares in a tenancy in common are equal. *Dern v. Dern (In re Estate of Dern Family Trust),* 279 Mont. 138, 151, 928 P.2d 123 (1996); Section 70-29-101, MCA. However, that presumption is not conclusive, especially if there is an agreement that governs the parties' interests. Here, the agreement plainly lays out the rights and responsibilities of both parties with respect to ownership interests, mortgage obligations, and additional property-related expenses. According to the agreement, Gwen is entitled to 50% ownership as a tenant in common. Amber and Diego are also collectively entitled to 50% ownership as a tenant in common. That much is not disputed. Because both parties have an equal interest in the property, upon the sale of said property, Gwen is entitled to 50% of the proceeds and Amber and Diego are entitled to 50% of the proceeds. There is no provision in the agreement that requires the mortgage to be paid prior to distributing the proceeds equally to each owner; to read such a provision into the agreement

6

would be improper. Rather, the agreement specifically allocates to each party a personal responsibility for a portion of the mortgage debt—30.68% to Gwen and 69.32% to Amber and Diego. Because the whole of a contract is to be taken together to give effect to every part, § 28-3-202, MCA, we decline to adopt Amber and Diego's position that elevates the 50/50 ownership provision above the remainder of the agreement. Such an interpretation ignores the express provision that each party is personally responsible for a portion of the mortgage.

¶12 We find the language of the agreement to be clear, unambiguous, and not susceptible to more than one interpretation. As such, we find there is no genuine issue of material fact, and the District Court's interpretation of the agreement was correct. Summary judgment in favor of Gwen was proper. We also note the appellants did not challenge on appeal the award of attorney fees. Accordingly, we find the District Court's award of attorney fees to Gwen was proper given the court's correct interpretation of the agreement and the provision of the agreement allowing the prevailing party to claim attorney fees.

¶13 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶14 Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE